<span style="color:red">**PUBLIC VERSION**</span>
**No. 2023-1355**

IN THE

# United States Court of Appeals

### FOR THE FEDERAL CIRCUIT

————————————

**AMSTED RAIL COMPANY, INC.,
ASF-K DE MEXICO S. DE R.L. DE C.V.,
STRATO, INC., and TTX COMPANY,**

**Plaintiffs-Appellants,**

**and**

**WABTEC CORPORATION,**

**Plaintiff,**

**v.**

**UNITED STATES INTERNATIONAL TRADE COMMISSION
and ACTING SECRETARY KATHERINE M. HINER,
in her official capacity,**

**Defendants-Appellees,**

**and**

**COALITION OF FREIGHT RAIL COUPLER PRODUCERS,**

**Defendant-Intervenor-Appellee.**

————————————

**On Appeal from the United States Court
of International Trade, Case No. 22-00307,
Judge Gary S. Katzmann**

————————————

**DEFENDANT-INTERVENOR-APPELLEE'S OPPOSITION TO THE
EMERGENCY MOTION TO EXPEDITE**

————————————

Daniel B. Pickard
Amanda L. Wetzel
Claire Webster
BUCHANAN INGERSOLL & ROONEY PC
1700 K St. N.W., Suite 300
Washington D.C. 20006-3807
(202) 452-7900

*Counsel for Defendant-Intervenor-Appellee*
*Coalition of Freight Rail Coupler Producers*

# CERTIFICATE OF INTEREST

Counsel for Defendant-Intervenor-Appellee the Coalition of Freight Rail Coupler Producers certify the following:

1.     The full name of every party or amicus represented by me is: the Coalition of Freight Rail Coupler Producers.

2.     The names of the real parties in interest represented by me are: the Coalition of Freight Rail Coupler Producers is made up of two constituent members in an *ad hoc* Coalition including McConway & Torley LLC and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the real parties represented by me are: McConway & Torley LLC is a wholly owned subsidiary of Arcosa, Inc, a publicly traded company.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial or agency or are expected to appear in this court are:

Daniel B. Pickard
Amanda L. Wetzel
Claire M. Webster
Buchanan Ingersoll & Rooney PC
1700 K St. N.W., Suite 300
Washington D.C., 20006-3807
(202) 452 7900

5.     The cases known to me to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal are: None.

6.     Organizational victims in criminal cases and debtors and trustees in bankruptcy cases are: None.

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

BACKGROUND ..................................................................................3

ARGUMENT ......................................................................................7

I.      There is no good cause to expedite these proceedings because CIT
        jurisdiction will be available to hear ARC's appeal of the
        Commissions' decision on attorney disqualification under 28 U.S.C. §
        1581(c) .....................................................................................8

II.     There is no need to expedite these proceedings because there is no
        evidence of imminent injury.........................................................11

III.    Appellants' request to expedite these proceedings places an
        unacceptable burden on opposing parties......................................14

IV.     A motion to expedite should be granted very rarely, and this case does
        not fall into the class of cases that should be expedited.................15

PRAYER FOR RELIEF .......................................................................17

The Court of International Trade in Case No. 22-00307 issued an order on October 17, 2022 indicating that certain identifying information should be treated as confidential, and the order appears as docket entry 24. Subsequently, the Court of International Trade issued a protective order (docket entry 49) that indicates that the obligations and protections imposed by the Protective Order shall continue beyond the conclusion of the case, including any appellate proceedings, or until the Court orders otherwise. Defendant-Intervenor-Appellee's opposition to the emergency motion to expedite includes confidential non-public information, which has been bracketed in the confidential version and redacted from the public version. Public disclosure of this information could cause competitive harm. The material omitted on pages 1, 2 and 16 includes personal identifying information covered by the October 17, 2022 order; the material omitted on pages 3, 4, 5, 12, 13, and 14 include communications covered by the Protective Order; and the material on pages 16-17 relate to the confidential nature of the allegations made by Appellants.

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Firestone Tire & Rubber Co. v. Risjord*,
    449 U.S. 368 (1981)................................................................8, 9, 10, 17

*GEO Specialty Chemical, Inc. v. Husisian*,
    951 F. Supp. 2d 32 (D.D.C. 2013).................................................6, 7

*Miller & Co. v. United States*,
    824 F.2d 961 (Fed. Cir. 1987) .............................................................8

*Shakeproof Indus. Prod. Div. of Illinois Tool Works Inc. v. United
    States*,
    104 F.3d 1309 (Fed. Cir. 1997) ...................................................*passim*

**Statutes**

28 U.S.C. § 1581(i) ............................................................................8, 15

28 U.S.C. § 1581(c) ..........................................................................*passim*

**Rules**

Federal Circuit Rule 27 .........................................................................1

Federal Circuit Rule 31 .......................................................1, 7, 17, 18

Federal Rule of Appellate Procedure 2 .................................................1

Federal Rule of Appellate Procedure 31 .................................1, 7, 17, 18

**Other Authorities**

Restatement (Third) of the Law Governing Lawyers § 75 (2000) ....................5, 14

# INTRODUCTION

Defendant-Intervenor-Appellee ("Appellee"), Coalition of Freight Rail Coupler Producers, hereby files this opposition to the Appellant's Emergency Motion to Expedite filed in this Court pursuant to Federal Circuit Rule 27 and Federal Rule of Appellate Procedure 2. Appellee requests that a standard briefing schedule be set in accordance with Federal Rule of Appellate Procedure 31 and Federal Circuit Rule 31. Appellee also requests that oral argument be scheduled in the normal course.

There is no good cause to expedite this appeal. Although Appellants baldly claim that they will suffer irreparable harm if their appeal is not expedited and if their attorney disqualification claims are not heard before the International Trade Commission (the "Commission") reaches its final determination, all parties agree that the final Commission determination will be subject to judicial review at its conclusion. Nor have Appellants pled irreparable harm with any specificity or otherwise made any showing of irreparable harm. In addition, Appellants could not be irreparably harmed by the client confidences that they allege were shared with the Attorney, [ NAME], during the preparation of the Petitions and shortly after their filing in the Predecessor Investigation, *Freight Rail Coupler Systems and Components from China*, that was filed before the Commission and the Department of Commerce ("Commerce") on September 28, 2021.

Appellants allege that the Attorney has a conflict of interest with a former client. However, all parties concede that Amsted Rail Company, Inc. ("ARC") not ASF-K de Mexico S. de R.L. de C.V. ("ASF-K") was the Attorney's former client. Even if ARC were found to have disclosed relevant confidential information to the Attorney, ARC is not the adverse foreign producer. The Mexican producer ASF-K is the relevant foreign producer. As a result, there is no direct conflict with a former client.

Declining to expedite these proceedings will not deprive the Appellants of meaningful judicial oversight as all parties agree that review of the Commission's treatment of their attorney disqualification claims against the Attorney and the Law Firm [      FIRM NAME      ] may occur at the Court of International Trade ("CIT") under 28 U.S.C. § 1581(c) jurisdiction following the Commission's final determination in the Current Investigations.

Finally, the briefing schedule that the Appellants propose, allowing just fourteen days for Appellees to file a response brief, would disadvantage Appellees due to the complexity of the issues to be briefed as well as due to the Attorney having several pending matters before the U.S. Court of International Trade ("CIT"), the Commission, and Commerce with substantive briefing deadlines in the upcoming weeks. In addition, the Attorney has international travel scheduled in the month of February.

## BACKGROUND

Appellants, in their emergency motion to expedite, provide a summary of the procedural history of the appeal, the Predecessor Investigations, the Current Investigations before the Commission and Commerce, and of the proceedings before the CIT.  However, Appellants have failed to inform the U.S. Court of Appeals for the Federal Circuit of several key facts.

First, with reference to the Predecessor Investigation, the [
ATTORNEY'S REPRESENTATION

] alleging dumping and subsidization of *Freight Rail Coupler Systems and Components from China.*  The Petitions in the Predecessor Investigation were filed on September 28, 2021.  The Coalition was an *ad hoc* trade association that was created for the purpose of filing trade remedy investigations on behalf of the domestic industry making freight rail couplers.  The joint representation of the Coalition originally included co-clients ARC and McConway & Torley LLC.  Notably, [    ATTORNEY'S REPRESENTATION OF ARC


].

(Exhibit A, CIT Case No. 22-00307: ECF 51-8).  The engagement letter explicitly stated [    ENGAGEMENT AGREEMENT CONTENTS

3

]. (Exhibit B, CIT Case No. 22-00307: ECF

51-9).  Thus, there could not be a conflict of interest in the current case with ASF-

K, which has been designated as the mandatory respondent by Commerce, because

it is an undisputed fact that all parties to this appeal concede that ASF-K was never

a client of the Attorney or the Law Firm.

The second factual omission from the background presented by the Appellants

also relates to the engagement agreement.  (Exhibit B, CIT Case No. 22-00307: ECF

51-9).  The engagement agreement that the Attorney concluded with ARC in the

Predecessor Investigation explicitly states that [

ENGAGEMENT AGREEMENT CONTENTS

]. (Exhibit B, CIT Case No. 22-00307:

ECF 51-9).  In other words, in the engagement agreement with the Attorney, [

ENGAGEMENT AGREEMENT CONTENTS

]. (Exhibit B, CIT

Case No. 22-00307: ECF 51-9).  Instead of honoring its undertakings in the

engagement agreement, [          ACTIONS CONTRARY TO ENGAGEMENT

AGREEMENT

4

***PUBLIC VERSION***

]. (Appellants' Exhibit A, ECF 26-2, p. 11; Exhibit C, CIT Case No. 22-307: ECF 41-14).

In addition, an important issue that was briefed in Case No. 22-00307 before the CIT relates to the joint representation of the *ad hoc* trade Coalition in the Predecessor Investigations and impacts the scope of the understanding of confidentiality of ARC's information.  One member of the original Coalition in the Predecessor Investigation cannot make a claim of disqualification anchored in an allegation of potential use of confidential information shared in the context of a co-client relationship, as the joint representation resulted in a waiver of confidentiality as between the Coalition members.  Indeed, "{t}he Rules governing the co-client privilege are premised on an assumption that co-clients usually understand that all information is to be disclosed to all of them.  Courts sometimes refer to this as a presumed intent that there should be no confidentiality between co-clients."[1]

The Appellants have also mischaracterized the legal relationship or lack thereof between the Predecessor Investigation related to Petitions filed on September 28, 2021 named *Freight Rail Coupler Systems and Components from China* and the Current Investigation related to the Petitions filed on September 28, 2022 named *Certain Freight Rail Couplers and Parts Thereof from the People's Republic of China and Mexico*.  In several places in their Emergency Motion to Expedite,

---

[1] *See* Restatement (Third) of the Law Governing Lawyers § 75 (2000).

Appellants state a conclusion that the Predecessor Investigations and Current Investigations are substantially related, when that statement has actually been heavily contested. (ECF. 26-1, p. 6, 8, 11, 16). Appellants have gone so far as to state that "no reasonable argument" can be made that the Predecessor Investigations and the Current Investigations were not substantially related. (ECF 26-1, p. 16).

In regard to the issue of antidumping investigations and the question of substantial relationship, *GEO Specialty Chemical, Inc. v. Husisian*, 951 F. Supp. 2d 32 (D.D.C. 2013) is on point. In *GEO Specialty Chemical*, the U.S. District Court for the District of Columbia, a court with considerable expertise in administrative law, found that two antidumping related proceedings involving the same product from the same country and *arising from the same antidumping order* were not substantially related:

> "{E}ach Commerce Department review or proceeding . . . is its own 'administrative proceeding, . . . claim, {or} investigation' and therefore qualifies as its own 'matter.' . . . It would be contrary to this definition, not to mention common sense, for this Court to lump together every glycine review that has occurred in the past eighteen years and that occurs indefinitely into the future simply because they deal with the same general matter under the same administrative I.D. number." 951 F. Supp. 2d at 43.

It bears repeating that *GEO Specialty Chemical* dealt with two matters connected to the very same antidumping investigation. The Predecessor Investigation and the Current Investigation are different cases, with different records, different countries,

different scopes, and different parties and are not substantially related. Consistent with the holding in *GEO Specialty Chemical,* the Commission's Predecessor Investigation on China was its own "administrative matter," which is distinct from a separate antidumping investigation regarding imports from Mexico.

With those clarifications of the factual background, and for the reasons discussed further below, there is no need to expedite these proceedings.

## ARGUMENT

Good cause does not exist to expedite this appeal because Appellants will not be adversely affected if the briefing schedule that applies in the usual course under Federal Rule of Appellate Procedure 31 and Federal Circuit Rule 31 is applied. There is no need to expedite these proceedings because there is no evidence of imminent injury and Appellants have here, like throughout the history of their assertion of these attorney disqualification claims, failed to allege the irreparable harm that they would suffer by waiting for 28 U.S.C. § 1581(c) review of their attorney disqualification claims at the CIT following Appellants' appeal of the Commission's determination. Instead, Appellants content themselves with making bald assertions about irreparable harm. Furthermore, Appellants request to expedite these proceedings places an unreasonable burden on the Appellee's counsel. In addition, Appellants' legal justification for expediting these proceedings is also non-existent. Appellants claims that this Court should seize the opportunity to clarify its

persuasive *dicta* in *Shakeproof Indus. Prod. Div. of Illinois Tool Works Inc. v. United States*, 104 F.3d 1309, 1313 (Fed. Cir. 1997), which counsels against jurisdiction over interlocutory appeals of attorney disqualification decisions under 28 U.S.C. § 1581(i). However, Appellants fail to mention that *Shakeproof* is entirely consistent with Supreme Court precedent indicating that interlocutory appeal of attorney disqualification decisions prior to a final judgment is not available. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981). As result, Appellants emergency motion to expedite should be denied.

## I.     There is no good cause to expedite these proceedings because CIT jurisdiction will be available to hear ARC's appeal of the Commissions' decision on attorney disqualification under 28 U.S.C. § 1581(c)

The extraordinary step of undertaking expedited proceedings in this matter is not merited because the Appellants will receive full review of their appeal of the Commission's final decision under the CIT's 28 U.S.C.§ 1581(c) jurisdiction.[2]

In its November 15, 2022 decision, the CIT determined that jurisdiction over Appellants' attorney disqualification claims would be improper under 28 U.S.C. § 1581(i) because § 1581(c) jurisdiction is not manifestly inadequate. (Appellants' Exhibit A, ECF 26-2, p. 17). The CIT decision was consistent with *Miller & Co. v.*

---

[2] The Commission has not yet issued a final determination in the underlying investigation. This fact indicates how speculative and premature it is to presume that the Appellants will have a final affirmative determination from which to appeal and further undermines any argument that an expedited review is necessary.

*United States*, 824 F.2d 961, 963 (Fed. Cir. 1987) (stating that "{s}ection 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate".)

In holding that jurisdiction under 28 U.S.C. § 1581(c) would not be manifestly inadequate, the CIT found *Shakeproof Indus. Prod. Div. of Illinois Tool Works Inc. v. United States*, 104 F.3d 1309, 1313 (Fed. Cir. 1997) to be persuasive. (Appellants' Exhibit A, ECF 26-2, p. 18-19).   Appellants' arguments that *Shakeproof* is not persuasive are misplaced because, in *Shakeproof*, the Federal Circuit stated the following:

> "We have serious doubts that judicial review of the disqualification issue would be manifestly inadequate if it were postponed until Commerce's final decision on the first review of the antidumping order.  For that reason, we believe there is substantial force to the government's suggestion that Shakeproof's request for judicial review in this case was premature."  104 F.3d at 1313.

The CIT's application of *Shakeproof* is fully consistent with Supreme Court precedent indicating that attorney disqualification decisions should not be subject to interlocutory appeal.

The Supreme Court has held that "{a}n order refusing to disqualify counsel plainly falls within the large class of orders that are indeed reviewable on appeal after final judgment, and not within the much smaller class of those that are not." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981).  The Supreme

Court indicated that "{t}he decision whether to disqualify an attorney ordinarily turns on the peculiar factual situation of the case then at hand, and the order embodying such a decision will rarely, if ever, represent a final rejection of a claim of fundamental right that cannot effectively be reviewed following judgment on the merits." *Id.* The Court also indicated that a party must "ordinarily raise all claims of error in a single appeal following final judgment on the merits." *Id.* at 373.

The Federal Circuit decision in *Shakeproof* and the Supreme Court decision in *Firestone* reflect the reality that there is nothing mooted or lost if appeals of attorney disqualification claims are heard only on appeal of final judgments or, in this case, a final determination of the Commission in the Current Investigation.[3] The CIT has all the necessary powers in law and equity to provide a remedy, if required under the law, for Appellants' claims while exercising its jurisdiction under 28 U.S.C. § 1581(c) following the Commission's final determination.

In addition, the Appellants' suggestion that they are, through bringing this appeal, giving this Court the opportunity to reconsider *Shakeproof*, such that their question on appeal would be mooted if the Commission reached a final

---

[3] In this case, Appellants would presumably only appeal an affirmative final determination of the Commission. No such decision has yet been made by the Commission. However, all parties appear to concede that, in the event of a final affirmative determination, Appellants could obtain judicial review, including on whether any finding of the Commission (including disqualification claims) was contrary to law, pursuant to 28 U.S.C. § 1581(c).

10

determination while the appeal is pending is not a legitimate concern. If the timing of the Commission's final determination occurs, as Appellants suggest, before the results of this appeal are either known or potentially acted upon by the CIT, Appellants would have an immediate avenue of effective relief under 28 U.S.C. § 1581(c) following the Commission's final determination and could receive relief by order of the CIT, if any relief is merited under the law. In addition, 28 U.S.C. § 1581(c) is the standard method of appeal for antidumping investigations that is provided for by Congress. Simply put, there is no need to expedite because full judicial review, including disqualification issues, will still be available to Appellants when and if the Commission makes an affirmative determination.

## II.    There is no need to expedite these proceedings because there is no evidence of imminent injury

Appellants submit that they would be irreparably harmed if their appeal is not expedited yet, despite having several opportunities to do so during the pendency of CIT Case No. 22-0037 and in their Motion to Expedite, Appellants have not plead irreparable harm with any specificity. For example, in their motion to expedite, Appellants make a bald assertion that they will suffer irreparable harm and then quote from cases related to attorney conflicts of interest, without any specific allegation of what irreparable harm will befall Appellants during the proceedings of the Commission in the Current Investigation. *See* (ECF 26-1, p. 10). Thus, while

11

Appellants are skilled at copying and pasting case law, they have failed to make any showing to justify the need for an expedited briefing schedule.

Appellants allege that certain information provided to the Attorney in the Predecessor Investigation regarding the injurious impact of Chinese imports could cause harm in the investigation of Mexico. However, these amount to nothing more than conclusory statements and any such alleged harm would still be subject to review under 28 U.S.C. § 1581(c). Regardless of the lack of substantive merit of their allegations (which fail to indicate that the current case involves a company different than the former client, that the former client [

ENGAGEMENT AGREEMENT CONTENTS

], the Appellants still fail to address the full powers in law and equity that the CIT has to fashion relief should any decision by the Commission be found to be contrary to law.

Appellants' assertions in regard any conflict connected with their purported "legal strategy for prosecuting FRC-related trade investigations" also fails as a matter of pure logic. Presumably, Appellants' argument is that said strategy for the Predecessor Investigation concerned evidence of injury to the domestic industry caused by Chinese imports. As ARC is a domestic producer, then use of any such information (assuming arguendo that it both existed and was confidential) would be used in the Current Investigation would only inure to the benefit of this domestic

producer.  However, if the true concern underlying the allegation is that this information could be used to the detriment of ASF-K, all parties agree that this entity was never a client of the Attorney (nor have they alleged how information regarding the injurious effects of Chinese imports would be relevant in regard to Mexico). Simply put, Appellants have failed to plead, demonstrate, or logically demonstrate any potential harm to justify an expedited proceeding.  And Appellants' logically deficient arguments still do not address the basic facts that ARC [

ACTIONS CONTRARY TO ENGAGEMENT AGREEMENT

].

(Exhibit B, CIT Case No. 22-00307: ECF 51-9).

Moreover, as a result, the possession of information alleged to be held by the Attorney as a result of his brief representation of ARC, even if it were judged to be either BPI or confidential information, could not result in irreparable harm accruing to ARC during the Commission's Current Investigation in light of the fact that the Current Investigation will focus on the BPI information released under the Current Investigation's APO, and all parties have admitted that the Appellants can pursue review of their attorney disqualification claims under 28 U.S.C. § 1581(c) following a final determination by the Commission.

In conclusion, ARC has failed to demonstrate any evidence justifying an expedited schedule. Their allegations of injury resulting from information in a case against China in the Current Investigation of Mexico is logically flawed and [

 ENGAGEMENT AGREEMENT CONTENTS



]. In addition, ARC was a co-client in a joint representation where all information disclosed to counsel for the Coalition was considered disclosed to all co-clients because there is a "presumption of no confidentiality between co-clients".[4]

## III.  Appellants' request to expedite these proceedings places an unacceptable burden on opposing parties

Appellants' proposed briefing schedule asks that Appellees file their principal briefs within 14 days of Appellant's opening brief, which was filed on January 13, 2022 (in effect 8 days from the day of this submission). Appellee submits that it is unreasonable to request it to make a complicated, substantive submission to the U.S. Court of Appeals for the Federal Circuit in such a compressed period of time. Considering the seriousness of the matter before the Court and given the possible outcome that the domestic industry in the Current Investigations could be deprived of their counsel of choice in the final phase of the Commission's investigation, the

---

[4] *See* Restatement (Third) of the Law Governing Lawyers § 75 (2000).

14

Appellants' proposal that the Appellees' briefing to the Court should be completed in eight days from today risks providing the Court with a rushed presentation of legal analysis.

The Appellants' request also puts an unacceptable burden on the parties. As just one example, the Attorney has existing cases before the U.S. Court of International Trade, submissions due before the U.S. International Trade Commission, and is involved in multiple U.S. Department of Commerce proceedings, with several upcoming submission deadlines. In addition, in the month of February, the Attorney has international travel scheduled and consequently the expedited request for a hearing could lead to an insufficient period of time for preparation. In light of all of these demands, the Appellants' request for expedited proceedings would pose an unacceptable burden on Appellees.

**IV.    A motion to expedite should be granted very rarely, and this case does not fall into the class of cases that should be expedited**

This case does not fall into the category of cases for which a motion to expedite should be granted. The CIT, in its opinion and order, properly relied on *Shakeproof Indus. Prod. Div. of Illinois Tool Works Inc. v. United States*. (Appellants' Exhibit A, ECF 26-2, p. 18-19). Appellants argue that this Court has an important and "time limited" opportunity to decide the issue addressed in *Shakeproof's dicta*, indicating that the U.S. Court of Appeals for the Federal Circuit had "serious doubts that judicial review of the disqualification issue {under 28

U.S.C. § 1581(c)} would be manifestly inadequate if it were postponed until Commerce's final decision on the first review of the antidumping order." 104 F.3d 1309, 1313 (Fed. Cir. 1997). This Court should not rush to redecide or clarify *Shakeproof* because *Firestone Tire & Rubber Co. v. Risjord* is Supreme Court precedent and validates the Federal Circuit's decision in *Shakeproof*; the Supreme Court indicated that "{a}n order refusing to disqualify counsel plainly falls within the large class of orders that are indeed reviewable on appeal after final judgment, and not within the much smaller class of those that are not." 449 U.S. 368, 377 (1981). Thus, Appellants' attempt to persuade this Court to expedite this appeal so it can re-decide or clarify *Shakeproof* should fail because the law that attorney disqualification decisions should be reviewed through appeals of final judgments or, in this case, a final determination in the Commission's investigation, is already long-established.

Indeed, the request for expedited treatment should be viewed in the overall context of Appellants' attempt to weaponize the rules of professional conduct. In the words of Prof. Michael Frisch, a legal ethics Counsel, adjunct legal ethics faculty member at Georgetown Law Center, and who served, from 2008 to 2014, on the U.S. Court of Appeals for the District of Columbia Advisory Committee on Admissions and Grievances and provided a declaration that was submitted in CIT Case No. 22-00307: [          LETTER CONTENTS

16

]. (Exhibit D, CIT Case No. 22-00307: ECF 93-2).

Appellee submits that there is no good cause to expedite the briefing schedule in this case[5] and requests that the briefing schedule be set to be no shorter than that provided in Federal Rule of Appellate Procedure 31 and Federal Circuit Rule 31.

## PRAYER FOR RELIEF

Appellee respectfully requests that the Court reject the Appellants' request for expedited briefing and enter an order establishing that Appellees' briefs be filed in not less than the time provided for in Federal Rule of Appellate Procedure 31 and Federal Circuit Rule 31.  Appellee requests that oral argument be scheduled in the normal course.

---

[5] Appellants want to bring to the Court's attention that there is an atypical confidentiality order in the CIT Case No. 22-00307 below and a non-standard judicial protective order in the same case that encompasses appellate proceedings and is intended to protect certain personal identification information. (Exhibit E, CIT Case No. 22-307, ECF, 21, 53, and docket entry 24).  To the extent that this Court deems it relevant to ensure in full compliance with the JPO, going forward in a non-expedited manner will assist in this endeavor.  The confidentiality order generally provides that substantive filings should be done in both a confidential and public manner.

Dated:  January 19, 2023          Respectfully Submitted,

**/s/ Daniel B. Pickard**
Daniel B. Pickard
BUCHANAN INGERSOLL & ROONEY PC
1700 K St. N.W., Suite 300
Washington D.C. 20006-3807
(202) 452-7900
*Counsel for Defendant-Intervenor-Appellee,*
*Coalition of Freight Rail Coupler Producers*

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:**  23-1355

**Short Case Caption:**  Amsted Rail Company, Inc. v. ITC

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  4754  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 01/19/2023

Signature:  /s/ Daniel B. Pickard, Esq.

Name:  Daniel B. Pickard, Esq.

Save for Filing

**FORM 31. Certificate of Confidential Material**

Form 31
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 23-1355

**Short Case Caption:** Amsted Rail Company, Inc. v. ITC

---

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).

- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

---

The foregoing document contains ___165___ number of unique words (including numbers) marked confidential.

☐ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☑ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 01/19/2023

Signature: /s/ Daniel B. Pickard, Esq.

Name: Daniel B. Pickard, Esq.

Save for Filing

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 23-1355

**Short Case Caption** Amsted Rail Company, Inc. v. ITC

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system.  See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).  Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on  01/19/2023

by ☐ U.S. Mail  ☐ Hand Delivery  ☐ Email  ☐ Facsimile
☑ Other:  CM/ECF

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Richard P. Ferrin, Esq. | FAEGRE DRINKER BIDDLE & REATH LLP<br>1500 K Street, NW, Suite 1100<br>Washington, DC 20005<br>Email: richard.ferrin@faegredrinker.com |
| Andrew T. Schutz, Esq. | GRUNFELD, DESIDERIO, LEBOWITZ, SILVERMAN & KLESTADT LLP<br>599 Lexington Avenue, 36th Floor<br>New York, NY 10022<br>Email: aschutz@gdlsk.com |
| James M. Smith, Esq. | COVINGTON & BURLING LLP<br>One City Center, 850 Tenth Street, NW<br>Washington, DC 20001<br>Email  jmsmith@cov com |
| David A.J. Goldfine, Esq. | David A.J. Goldfine<br>U.S. International Trade Commission, Office of the General Counsel<br>500 E Street, SW.<br>Washington, DC 20436<br>Email: david.goldfine@usitc.gov |
| David M. Morrell, Esq. | David M. Morrell<br>Jones Day<br>51 Louisiana Avenue, NW.<br>Washington, DC 20001<br>Email: dmorrell@jonesday.com |

☐ Additional pages attached.

Date: 01/19/2023

Signature:  /s/ Daniel B. Pickard, Esq.

Name:  Daniel B. Pickard, Esq.

Save for Filing

No. 2023-1355

IN THE
# United States Court of Appeals
### FOR THE FEDERAL CIRCUIT

---

**AMSTED RAIL COMPANY, INC.,
ASF-K DE MEXICO S. DE R.L. DE C.V.,
STRATO, INC., and TTX COMPANY,**

**Plaintiffs-Appellants,**

**and**

**WABTEC CORPORATION,**

**Plaintiff,**

**v.**

**UNITED STATES INTERNATIONAL TRADE COMMISSION
and ACTING SECRETARY KATHERINE M. HINER,
in her official capacity,**

**Defendants-Appellees,**

**and**

**COALITION OF FREIGHT RAIL COUPLER PRODUCERS,**

**Defendant-Intervenor-Appellee.**

---

**On Appeal from the United States Court
of International Trade, Case No. 22-00307,
Judge Gary S. Katzmann**

---

**DEFENDANT-INTERVENOR-APPELLEE'S MOTION TO WAIVE
CONFIDENTIALITY WORD COUNT REQUIREMENT**

---

Daniel B. Pickard
Amanda L. Wetzel
Claire M. Webster
BUCHANAN INGERSOLL & ROONEY PC
1700 K St. N.W., Suite 300
Washington D.C. 20006-3807
(202) 452-7900

*Counsel for Defendant-Intervenor-Appellee*
*Coalition of Freight Rail Coupler Producers*

# INTRODUCTION

Defendant-Intervenor-Appellee, Coalition of Freight Coupler Producers, pursuant to Federal Circuit Rule 25.1(d)(3), hereby moves this Court to waive the confidential word count requirement for its Opposition to the Emergency Motion to Expedite ("Opposition"). Pursuant to Federal Circuit Rule 25.1(d)(1)(A), each motion, petition, response, reply, or brief may mark as confidential up to fifteen unique words. Defendant-Intervenor-Appellee's Opposition marks as confidential 165 unique words.

# ARGUMENT

Defendant-Intervenor-Appellee respectfully submits that good cause exists for this waiver. The relevant information contained herein refers to certain identifying information and communications, which were covered by the Protective Order in the originating case. *See* Exhibit E-3; ECF No. 53.

The Joint Protective Order from the case below specifies that "Material designated as Proprietary Information shall be treated as such by the parties until the Court has determined or ordered otherwise." *Id.* This is consistent with Federal Circuit Rule 25.1(c)(1), which states that, "In general, any portion of the record that was subject to a protective order in the trial court or agency must remain subject to that order on appeal or review." Defendant-Intervenor-Appellee treats

this information as confidential in order to ensure both compliance with the Joint Protective Order and that the information does not lose its confidential status. *See* FED. CIR. R. 25.1(c)(1).

## PRAYER FOR RELIEF

Defendant-Intervenor-Appellee therefore respectfully requests that the Court order that the confidential information contained in square brackets in its Opposition be treated as confidential by the Court.

Dated: January 19, 2023

Respectfully Submitted,

**/s/ Daniel B. Pickard**
Daniel B. Pickard
BUCHANAN INGERSOLL & ROONEY PC
1700 K St. N.W., Suite 300
Washington D.C. 20006-3807
(202) 452-7900
*Counsel for Defendant-Intervenor-Appellee,*
*Coalition of Freight Rail Coupler Producers*

# EXHIBIT A

# This Exhibit Not Susceptible to Public Inspection

# EXHIBIT B

# This Exhibit Not Susceptible to Public Inspection

# EXHIBIT C

# This Exhibit Not Susceptible to Public Inspection

# EXHIBIT D

# This Exhibit Not Susceptible to Public Inspection

# EXHIBIT E-1

# U.S. Court of International Trade
## LIVE Database (New York)
## CIT DOCKET FOR CASE #: 1:22-cv-00307-GSK

Amsted Rail Company, Inc. et al v. United States International
Trade Commission
**Assigned to:** Gary S. Katzmann
**Lead Docket:**

**Date Filed:** 10/14/2022
**Jury Demand:** No

**Jurisdiction:**
28USC § 1581(i) Residual Jurisdiction

**Date Terminated:** 11/15/2022

**Category:**
Tariffs, Duties, Fees, Other Taxes 28USC § 1581(i)(2)
Administration and Enforcement 28USC § 1581(i)(4)

**Date Reopened:**

**Does this action raise an issue of
constitutionality?:** N

**Agency:**
U.S. International Trade Commission

**Product Description:**
Freight Rail Couplers

**Export Country:**
China
Mexico

**Plaintiff**

**Amsted Rail Company, Inc.**

represented by **Richard Preston Ferrin**
Faegre Drinker Biddle & Reath, LLP
1500 K Street, NW.
Washington, DC 20005
(202) 230-5803
Fax  (202) 842 8465
Email: richard.ferrin@faegredrinker.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
*Bar Status: ACTIVE*

**Brian Perryman**
Faegre Drinker Biddle & Reath, LLP
1500 K Street, NW.
Suite 1100
Washington, DC 20005
(202) 230 5225
Fax: (202) 842-8465

| | | |
|---|---|---|
| | | Ferrin of Faegre Drinker Biddle & Reath, LLP on behalf of ASF K de Mexico S de R L de C.V., Amsted Rail Company, Inc..(Ferrin, Richard) (Entered: 10/14/2022) |
| 10 14/2022 | [11](#) | Form 11 Notice of Appearance *for Andrew T. Schutz and Ned H. Marshak*. Filed by Richard Preston Ferrin of Faegre Drinker Biddle & Reath, LLP on behalf of Strato, Inc.. Ferrin, Richard) (Entered: 10/14/2022) |
| 1 14/2022 | [12](#) | Form 11 Notice of Appearance *for David M Morrell* Filed by Richard Preston Ferrin of Faegre Drinker Biddle & Reath, LLP on behalf of Wabtec Corp..(Ferrin, Richard) (Entered 10/14/2022) |
| 10 14/2022 | [13](#) | Form 11 Notice of Appearance *for James M. Smith, Shara L. Aranoff, and Sooan (Vivian) Choi*. Filed by Richard Preston Ferrin of Faegre Drinker Biddle & Reath, LLP on behalf of TTX Company.(Ferrin, Richard) (Entered: 10/14/2022) |
| 10 14/2022 | [14](#) | Verified Complaint against U.S. International Trade Commission. Answer due by 12 13/2022 Filed by Richard Preston Ferrin of Faegre Drinker Biddle & Reath, LLP on behalf of All Plaintiffs.(Ferrin, Richard) (Entered: 10/14/2022) |
| 10 14/2022 | [15](#) | Application/Motion for temporary restraining order . Responses due by 11/4/2022. Filed by Richard Preston Ferrin of Faegre Drinker Biddle & Reath, LLP on behalf of All Plaintiffs.(Ferrin, Richard) (Entered: 10/14/2022) |
| 1 14/2022 | [16](#) | Application/Motion for temporary restraining order *(Proposed Order)* Responses due by 11/4/2022. Filed by Richard Preston Ferrin of Faegre Drinker Biddle & Reath, LLP on behalf of All Plaintiffs (Ferrin, Richard) (Entered 10/14/2022) |
| 10 14/2022 | [17](#) | Memorandum of Points and Authorities *in Support of Plaintiffs' Motion for Temporary Restraining Order*. Filed by Richard Preston Ferrin of Faegre Drinker Biddle & Reath, LLP on behalf of All Plaintiffs. (Ferrin, Richard) (Entered: 10/14/2022) |
| 10 17/2022 | [18](#) | Certificate of service (related document(s) [15](#) , [17](#) , [1](#) , [14](#) , [16](#) ). Filed by Richard Preston Ferrin of Faegre Drinker Biddle & Reath, LLP on behalf of All Plaintiffs (Ferrin, Richard) (Entered: 10/17/2022) |
| 10 17/2022 | 19 | *TRO Status Conference*. Status Conference set for 10/17/2022 02:00 PM in Courtroom No. 1. (Cheevers, Casey) (Entered: 10/17/2022) |
| 10 17/2022 | [20](#) | Status Conference held on 10/17/2022 at 2:00 p.m. in Courtroom No. 1. *Appearance Sheet attached* (Cheevers, Casey) (Entered 10/17/2022) |
| 10 17/2022 | [21](#) | Confidential Order entered on 10/17/2022 staying the release of business proprietary information submitted by Plaintiffs.(Related Doc # [15](#) )(Related Doc # [16](#) ). (Cheevers, Casey) (Entered: 10/17/2022) |
| 10 17/2022 | [22](#) | Public Version of Confidential Order entered on 10/17/2022 staying the release of business proprietary information submitted by Plaintiffs (related document [21](#) Cheevers, Casey) (Entered: 10/17/2022) |
| 10 17/2022 | [23](#) | [DUPLICATE ENTRY OF DOCUMENT [22](#) ] Public Version of Confidential Order entered on 10/17/2022 staying the release of business proprietary information submitted by Plaintiffs. (Related Doc # [16](#) ). (Cheevers, Casey) Modified on 10/17/2022 (Cheevers, Casey). (Entered: 10/17/2022) |
| 10 17/2022 | 24 | Order entered on 10/17/2022 Procedural Order: Consistent with the issuance of public and confidential versions of an order in this case by the court today [Docs # 21 and 22] as relates to the identifying information in that order, the parties are directed henceforth to file public and confidential versions relating to that identifying information (Warner, Scott) (Entered: 10/17/2022) |

# EXHIBIT E-2

*PUBLIC VERSION*

## UNITED STATES COURT OF INTERNATIONAL TRADE

AMSTED RAIL COMPANY, INC.,
ASF-K DE MEXICO S. DE R.L. DE C.V.,
STRATO, INC., WABTEC CORP., and
TTX COMPANY,

                  Plaintiffs,

    v.

UNITED STATES INTERNATIONAL
TRADE COMMISSION,

                 Defendant.

Before:  Gary S. Katzmann, Judge
Court No. 22-00307

**PUBLIC VERSION**

## ORDER

Upon consideration of the papers before the Court and status conference in this case, it is hereby

**ORDERED** that the release by the International Trade Commission to [[

]] of business proprietary information submitted by Plaintiffs in the antidumping and countervailing duty investigations before the Commission styled *Certain Freight Rail Couplers and Parts Thereof from China and Mexico*, USITC Inv. Nos. 701-TA-682 and 731-TA-1593-1593, **BE STAYED**.

**SO ORDERED**.

                   /s/    *Gary S. Katzmann*
                           Judge

Dated:  October 17, 2022
       New York, New York

# EXHIBIT E-3

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMAN, JUDGE

| | |
|---|---|
| **AMSTED RAIL COMPANY, INC.,**<br>**ASF-K DE MEXICO S. DE R.L. DE C.V.,**<br>**STRATO, INC., WABTEC CORP.,**<br>**AND TTX COMPANY,** | |
| **Plaintiffs,** | |
| **v.** | **Court No. 22-00307** |
| **UNITED STATES INTERNATIONAL**<br>**TRADE COMMISSION,** | |
| **Defendant,** | |
| **and** | |
| **COALITION OF FREIGHT RAIL**<br>**COUPLER PRODUCERS,** | |
| **Defendant-Intervenor.** | |

PROTECTIVE ORDER

1. For the purposes of this Protective Order, "Proprietary Information" means information, data and documents the public disclosure of which would cause substantial competitive harm to the submitting party. Examples of such information would include: (1) terms of sale, prices of individual sales, likely sales, or other offers and names of particular customers, distributors, or suppliers; (2) information that any party or person is prohibited from releasing publicly pursuant to contracts, applicable statutes, applicable regulations, or directives from the Government; (3) private information that is otherwise protected from disclosure under applicable law including, but not limited to, personnel files, financial information and other business records; and (4) other

confidential research, development, or commercial information as set forth in Rule 26(c)(1)(G) of the Rules of this Court.

2.  This Protective Order is not intended to address or govern claims of privilege or work product that may otherwise be asserted by any of the parties. This Protective Order does not restrict in any manner a party's use of its own Proprietary Information.

3.  No receiving party may disclose any document designated as containing Proprietary Information, or any information contained in such a document, to any person other than:

    A.  Counsel for a party in this action who are engaged in the conduct or preparation of this action or any appeal from a decision in this action;

    B.  Secretaries, paralegal assistants, clerical personnel, and other employees of a party in this action who are engaged in assisting counsel (as described in item A of this paragraph) in the preparation of this action;

    C.  Persons who prepared, received, or reviewed such Proprietary Information prior to its production in this case;

    D.  Government personnel or investigators to whom counsel determine in good faith that disclosure is required to assist in the disposition of this case;

    E.  Authorized personnel of the U.S. Court of International Trade;

    F.  Videographers or court reporters retained by a party to this action or the Court; and

    G.  Any third-party consultant or experts who are retained to assist in the preparation of this action.

4.  Counsel for the parties shall cause all persons under counsel's direction and control who see Proprietary Information to comply with the terms of this Protective Order, and to sign a

statement to be filed with the Court acknowledging that their access to Proprietary Information will be under the direction and control of counsel, and that they will comply with the terms of this Protective Order. The filing of a Form 17 (Business Proprietary Information Certification) under the Rules of the U.S. Court of International Trade will satisfy the requirements of this paragraph. The requirement to sign and file a statement with the Court does not apply to Government personnel.

5.   All persons having access to Proprietary Information shall maintain it in a safe and secure manner to ensure compliance with this Protective Order. Persons receiving Proprietary Information pursuant to this Protective Order will not use or disclose any such information for any purpose other than the litigation of this action.

6.   A designation of information as "confidential" or "business proprietary" is to be made by enclosing such information in brackets and stamping or otherwise inscribing the word "CONFIDENTIAL" and/or "BUSINESS PROPRIETARY INFORMATION" and/or "PROPRIETARY DOCUMENT" and/or "SUBJECT TO PROTECTIVE ORDER" upon the document itself. When a document contains information that is both non-confidential and confidential, the producing party will make a reasonable effort to segregate the confidential portions by clearly identifying the specific pages and/or portions thereof which are confidential. The filing with the Court of confidential and public versions of a party's appendix will satisfy the requirements of this paragraph. Those portions of documents which are not confidential will not be restricted by this Protective Order, and the parties, in their publicly filed pleadings, publicly filed briefs, or other publicly filed submissions, may quote, reference, or summarize non-confidential information contained in a document containing both non-confidential and confidential information, without redaction.

7.  Any documents, including briefs and memoranda that are filed with the Court in this civil action and that contain any Proprietary Information, shall be conspicuously marked as containing Proprietary Information that is not to be disclosed to the public.

8.  Arrangements shall be made with the Clerk of the Court to retain such documents under seal, permitting access only to the Court, Court personnel authorized by the Court to have access, counsel for the plaintiff, and counsel for the defendant. The party filing any document referred to in this paragraph shall also file a non-confidential version of such document from which all of the Proprietary Information shall have been deleted in accordance with Rule 81 of the Rules of this Court. The non-confidential version may be filed within one day of the filing of the original confidential version in accordance with Rule 5(g) of the Rules of this Court.

9.  If counsel for any party to this Protective Order finds it necessary to refer to Proprietary Information in any oral proceeding before this Court, such counsel shall notify the Court and all other counsel of record as soon as the necessity becomes apparent and propose whatever mechanism which may be available and appropriate to prevent disclosure of Proprietary Information to persons other than those authorized by this Protective Order.

10. The obligations and protections imposed by this Protective Order shall continue beyond the conclusion of this case, including any appellate proceedings, or until the Court orders otherwise.

11. Within 30 days of the final conclusion of this litigation, including such appellate review as may occur, documents designated as Proprietary Information and all copies of same (other than exhibits of record) will be destroyed by any non-Government receiving party and such parties will certify to the Court the destruction of same.

12. Any party may petition the Court, on reasonable notice to all other parties, for a modification of the terms of this Protective Order. The Court shall have continuing jurisdiction to modify, amend, enforce, interpret, or rescind any or all provisions of this Protective Order, notwithstanding the final termination or conclusion of this case.

13. If a dispute arises concerning the designation of any Proprietary Information, the parties shall first take reasonable steps to meet and confer in good faith to resolve any dispute on an informal basis before seeking the Court's intervention.

14. If the parties cannot informally resolve any dispute regarding whether particular information is properly designated as Proprietary Information under this Protective Order, a party may apply to or move for the Court to resolve the issue. Material designated as Proprietary Information shall be treated as such by the parties until the Court has determined or ordered otherwise. The burden rests on the party designating the material as Proprietary Information to demonstrate that such designation is proper.

SO ORDERED.

/S/ Gary S. Katzmann
JUDGE

Dated: October 27, 2022
New York, New York