2023-1355

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

AMSTED RAIL COMPANY, INC., ASF-K DE MEXICO S.
DE R.L. DE CV., STRATO, INC., and TTX COMPANY,

*Plaintiffs-Appellants*,

and WABTEC CORPORATION,

*Plaintiff*,

v.

UNITED STATES INTERNATIONAL TRADE
COMMISSION and ACTING SECRETARY
KATHERINE M. HINER, in her official capacity,

*Defendants-Appellees,*
and

COALITION OF FREIGHT RAIL COUPLER PRODUCERS,

*Defendant-Intervenor-Appellee.*

---

Appeal from the United States Court of International Trade
in Consol. Case No. 22-cv-00307, Judge Gary S. Katzmann

---

## NONCONFIDENTIAL BRIEF OF DEFENDANTS-APPELLEES UNITED STATES INTERNATIONAL TRADE COMMISSION AND KATHERINE M. HINER

JANE C. DEMPSEY
Attorney for Defendants-Appellees
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone (202) 205-3142

DOMINIC L. BIANCHI
General Counsel
Telephone (202) 205-3061

ANDREA C. CASSON
Assistant General Counsel
 for Litigation
Telephone (202) 205-3105

**February 22, 2023**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iv

STATEMENT OF RELATED CASES ...................................................... xi

JURISDICTIONAL STATEMENT ............................................................ 1

STATEMENT OF THE ISSUE ................................................................... 1

STATEMENT OF THE CASE .................................................................... 2

STATEMENT OF THE FACTS .................................................................. 4

    I.     The Commission's Proceedings............................................. 4

          A.    The Prior Investigations on Freight Rail Couplers
              from China ............................................................... 4

          B.    Current Investigations on Freight Rail Couplers
              from China and Mexico ........................................... 7

    II.    Court of International Trade Proceedings............................... 9

SUMMARY OF THE ARGUMENT ....................................................... 14

ARGUMENT .......................................................................................... 17

    I.     Standard of Review ........................................................... 17

    II.    The Court of International Trade Lacked Subject Matter
          Jurisdiction Under Section 1581(i) .................................... 18

          A.    Statutory Framework .............................................. 18

          B.    Section 1581(c) Jurisdiction Will Be Available
              After the Commission's Final Determinations ......... 20

          C.    The Remedy Available Under Section 1581(c) Is
              Not Manifestly Inadequate...................................... 26

          D.    The Court of International Trade Properly Held that
              Amsted's Conflict Allegations Are Too Threadbare
              to Show Manifest Inadequacy.................................. 39

## TABLE OF CONTENTS (cont'd)

1.    The Lower Court Did Not Impose An Unworkable Jurisdictional Standard..............................40

2.    The "Substantial Relationship" Test Does Not Categorically Establish Manifest Inadequacy ................41

3.    *Firestone* and *Shakeproof* Are Instructive and Persuasive in Counseling Against Interlocutory Review ...........................................................................45

4.    The Lower Court Did Not Err in Dismissing the Case Without Leave to Amend *When Such Leave to Amend Was Never Requested* ..........................48

III.    Alternatively, This Court Can Affirm the Dismissal of This Case on Grounds that Amsted Failed to State a Claim Upon Which Relief Can Be Granted...................................................54

CONCLUSION.......................................................................57

## CONFIDENTIAL MATERIAL OMITTED

The material omitted within the text on page 10 reflects sensitive, nonpublic information that was designated by the parties as confidential pursuant to the Court of International Trade Judicial Protective Order in the proceedings below.  The omitted material relates to details of the Coalition's response to claims regarding an alleged Commission APO breach.

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Algoma Steel Corp. v. United States,*
    865 F.2d 240 (Fed. Cir. 1989) ........................................................30

*In re Am. Airlines, Inc.,*
    972 F.2d 605 (5th Cir. 1992) ....................................................34, 35

*ARP Materials Inc. v. United States,*
    47 F.4th 1370 (Fed. Cir. 2022) ................................................17, 19

*Arthrocare Corp. v. Smith & Nephew, Inc.,*
    406 F.3d 1365 (Fed. Cir. 2005) .........................................................51

*Astornet Techs. Inc. v. BAE Sys., Inc.,*
    802 F.3d 1271 (Fed. Cir. 2015) .........................................................51

*Atasi Corp. v. Seagate Tech.,*
    847 F.2d 826 (Fed. Cir. 1988) .........................................................44

*Beer v. United States,*
    696 F.3d 1174 (Fed. Cir. 2021) .........................................................52

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................54, 55

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States,*
    986 F. Supp. 2d 1381 (Ct. Int'l Trade 2014) ................................26, 29

*Cahill v. Merit Syst. Prot. Bd.,*
    821 F.3d 1370 (Fed. Cir. 2016) .........................................................51

*Carnation Enters. v. U.S. Dep't of Com.,*
    719 F. Supp. 1084 (Ct. Int'l Trade 1989) ........................................29

*Chugach Elec. Ass'n v. U.S. Dist. Ct. for Dist. of Alaska,*
    370 F.2d 441 (9th Cir. 1966) .........................................................44

*Cohen v. Beneficial Indus. Loan Corp.,*
    337 U.S. 541 (1949).........................................................................24

## TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)**                                                                      **Page(s)**

*Confederacion de Asociaciones Agricolas del Estado de Sinaloa v.*
    *United States*,
    459 F. Supp. 3d 1354 (Ct. Int'l Trade 2020), *jurisdictional analysis*
    *aff'd*, 32 F.4th 1130 (Fed. Cir. Apr. 14, 2022) .................................................. 21

*Dofasco Inc. v. United States*,
    326 F. Supp. 2d 1340 (Ct. Int'l Trade 2004), *aff'd*, 390 F.3d 1370
    (Fed. Cir. 2004) .................................................................................................. 29

*In re Dresser Indus.*,
    972 F.2d 540 (5th Cir. 1992) ....................................................................... 34, 35

*Dynamic 3D Geosolutions LLC v. Schlumberger Ltd. (Schlumberger*
    *N.V.)*,
    837 F.3d 1280 (Fed. Cir. 2016) ................................................................... 43, 44

*Elkem Metals Co. v. United States*,
    193 F. Supp. 2d 1314 (Ct. Int'l Trade 2002) ............................................... 39, 47

*Erwin Hymer Grp. N.A., Inc. v. United States*,
    930 F.3d 1370 (Fed. Cir. 2019) ...............................................17, 19, 20, 27, 28

*EZ Painter Corp. v Padco, Inc.*,
    746 F.2d 1459 (Fed. Cir. 1984) ......................................................................... 44

*Firestone Tire & Rubber Co. v. Risjord*,
    449 U.S. 368 (1981)..................................................................................*passim*

*Foman v. Davis*,
    371 U.S. 178 (1962).......................................................................................... 52

*Geo Specialty Chem., Inc. v. Husisian*,
    951 F. Supp. 2d 32 (D.D.C. 2013)..................................................................... 38

*Goldsmith v. U.S. Bd. of Tax Appeals*,
    270 U.S. 117 (1926).......................................................................................... 55

*Grimes v. District of Columbia*,
    794 F.3d 83 (D.C. Cir. 2015)............................................................................ 34

v

# TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)**                                                                                                    **Page(s)**

*Intercontinental Chem., LLC v. United States,*
   483 F. Supp.3d 1232 (Ct. Int'l Trade 2020) ................................................25, 26

*Intrepid v. Pollock,*
   907 F.2d 1125 (Fed. Cir. 1990) ...........................................................................49

*Juancheng Kangtai Chem. Co. v. United States,*
   932 F.3d 1321 (Fed Cir. 2019) ........................................................17, 20, 28, 36

*Kearns v. Fred Lavery Porsche Audi Co.,*
   745 F.2d 600 (Fed. Cir. 1984) ............................................................................44

*Koyo Seiko Co., Ltd. v. United States,*
   715 F. Supp. 1097 (Ct. Int'l Trade 1989) ..................................22, 38, 39, 46, 47

*M S Int'l, Inc. v. United States,*
   425 F. Supp. 3d 1332 (Ct. Int'l Trade 2020) ......................................................21

*Makita Corp. v. United States,*
   819 F. Supp. 1099 (Ct. Int'l Trade 1993) ..................................29, 30, 31, 40, 41

*Merle Norman Cosmetics, Inc. v. U.S. Dist. Ct. of Cal.,*
   856 F.2d 98 (9th Cir. 1988) ..........................................................................34, 35

*Miller & Co. v. United States,*
   824 F.2d 961 (Fed. Cir. 1987) .....................................................................passim

*Mills v. State of Me.,*
   118 F.3d 37 (1st Cir. 1997).................................................................16, 52, 53

*Mojave Desert Holdings, LLC v. Crocs, Inc.,*
   995 F.3d 969 (Fed. Cir. 2021) ............................................................................52

*Morrison v. Nat'l Austl. Bank Ltd.,*
   561 U.S. 247 (2010)............................................................................................54

*Nat'l Corn Growers Ass'n v. Baker,*
   840 F.2d 1547 (Fed. Cir. 1988) .........................................................................22

## TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)**                                                                                       **Page(s)**

*NEC Corp. v. United States*,
    151 F.3d 1361 (Fed. Cir. 1998) ............................................................25, 26, 36

*Newman-Green, Inc. v. Alfonzo-Larrain*,
    490 U.S. 826 (1989)................................................................................52

*Norcal/Crosetti Foods, Inc. v. United States*,
    963 F. 2d 356 (Fed. Cir. 1992) ...........................................................27

*Norman G. Jensen, Inc. v. United States*,
    687 F.3d 1325 (Fed. Cir. 2012) ..........................................................19

*Palumbo v. Tele-Comm., Inc.*,
    157 F.R.D. 129 (D.D.C. 1994) ...........................................................43

*PPG Indus. Inc. v. United States*,
    525 F. Supp. 883 (Ct. Int'l Trade 1981) ............................................22

*Reynolds v. Army & Air Force Exch. Serv.*,
    846 F.2d 746 (Fed. Cir. 1988) ............................................................49

*Richardson-Merrell v. Koller*,
    472 U.S. 424 (1985)..........................................................................23, 24

*Sarnoff v. Am. Home Prods. Corp.*,
    798 F.2d 1075 (7th Cir. 1986) ............................................................53

*Schlesinger v. Councilman*,
    420 U.S. 738 (1975)................................................................................52

*Shakeproof Indus. Prods. Div. of Ill. Tool Works, Inc. v. United States*,
    104 F.3d 1309 (Fed. Cir. 1997) ...................................................*passim*

*In re Shared Memory Graphics LLC*,
    659 F.3d 1336 (Fed. Cir. 2011) ............................................33, 36, 43

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.*,
    672 F.3d 1041 (Fed. Cir. 2012) ......................................................54, 56

## **TABLE OF AUTHORITIES (cont'd)**

**Cases (cont'd)**                                                        **Page(s)**

*Smithkline Beecham Corp. v. Apotex Corp.*,
    439 F.3d 1312 (Fed. Cir. 2006) ........................................................31

*Sunpreme Inc. v. United States*,
    892 F.3d 1186 (Fed. Cir. 2018) ...............................................22, 28

*Timken Co. v. United States*,
    893 F.2d 337 (Fed. Cir. 1990) .........................................................32

*TR Int'l Trading Co. v. United States*,
    4 F.4th 1363 (Fed. Cir. 2021) ...................................................17, 39

*Unified Sewage Agency of Wash. Cty. v. Jelco Inc.*,
    646 F.2d 1339 (9th Cir. 1981) ..................................................34, 35

*United States v. Prevezon Holdings, Ltd.*,
    839 F.3d 227 (2d Cir. 2016) ............................................................44

*In re Univ. of S. Fla. Bd. of Trs.*,
    455 F. App'x 988 (Fed. Cir. 2012) ............................................32, 43

*Van Buskirk v. United Grp. of Cos.*,
    935 F.3d 49 (2d Cir. 2019) ..............................................................52

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
    435 U.S. 519 (1978)..........................................................................55

*Wanxiang Am. Corp. v. United States*,
    12 F.4th 1369 (Fed. Cir. 2021) ...............................17, 19, 20, 27, 28

*Willingham v. Morgan*,
    395 U.S. 402 (1969)..........................................................................52

*Yablonski v. United Mine Workers of Am.*,
    454 F.2d 1036 (D.C. Cir. 1971)................................................33, 34

## TABLE OF AUTHORITIES (cont'd)

**Statutes**                                                    **Page(s)**

19 U.S.C. § 1337 ................................................................................30

19 U.S.C. § 1516a .........................................................................19, 21

19 U.S.C. § 1516a(a)(1)(C) ...............................................................7

19 U.S.C. § 1671d(b)(1) ...........................................................18, 56

19 U.S.C. § 1673b(a) ..........................................................................8

19 U.S.C. § 1673d(b)(1) ...........................................................18, 56

19 U.S.C. § 1677f(g) ...........................................................................8

28 U.S.C. § 1291 .........................................................................24, 45

28 U.S.C. § 1295 ...............................................................................46

28 U.S.C. § 1295(a)(5) ........................................................................1

28 U.S.C. § 1581 ...........................................................12, 18, 20, 27

28 U.S.C. § 1581(i) ...................................................................*passim*

28 U.S.C. § 1581(c) ..................................................................*passim*

28 U.S.C. § 1653 ...............................................................................52

Labor Management Reporting and Disclosure Act of 1959, § 501(b) ....................34

**Regulatory Materials**

19 C.F.R. § 201.15(a) ..................................................................10, 37

19 C.F.R. § 351.203(b)(1) .................................................................4

86 Fed. Reg. 64,958, *Freight Rail Coupler Systems and Components from China,* Preliminary Views, U.S. Int'l Trade Comm'n (Nov. 19, 2021) ...................................................................................5

## <u>TABLE OF AUTHORITIES (cont'd)</u>

**Regulatory Materials (cont'd)**                                    **Page(s)**

87 Fed. Reg. 41,144, *Freight Rail Coupler Systems and Components
    from China,* Final Determination, U.S. Int'l Trade Comm'n (July
    11, 2022) ...............................................................................................6

**Legislative Materials**

H.R. Rep. No. 96-1235 (1980)................................................................21

**USITC Publications**

USITC Pub. 5243, *Freight Rail Coupler Systems and Components
    from China*, Inv. Nos. 701-TA-670 and 731-TA-1570
    (Preliminary) (Nov. 2021) ...............................................................6

USITC Pub. 5331, *Freight Rail Coupler Systems and Components
    from China*, Inv. Nos. 701-TA-670 and 731-TA-1570 (Final) (July
    2022) ...........................................................................................4, 6, 7

USITC Pub. 5387, *Freight Rail Coupler Systems and Components
    from China and Mexico*, Inv. Nos. 701-TA-682 and 731-TA-1592-
    1593 (Preliminary) (Nov. 2022) .......................................................8

**Rules**

Am. Bar Ass'n Model R. of Pro. Conduct 1.9(a) .....................................9

CIT R. 12(b)(6) ......................................................................................54

CIT R. 15(a) ...........................................................................................48

CIT R. 15(a)(2) .......................................................................................49

D.C. Rule of Pro. Conduct 1.9(a) ............................................................9

Fed. R. Civ. P. 12(b)(1)...........................................................................56

Fed. R. Civ. P. 12(b)(6) ....................................................................51, 54

## STATEMENT OF RELATED CASES

Pursuant to Rule 47.5 of the Rules of this Court, counsel for Defendants-Appellees state that they are not aware of any other appeal in or from this action that was previously before this Court, or any other appellate court.  This case is related to another case pending before the Court of International Trade, *Amsted Rail Company, Inc. v. U.S. Department of Commerce* (No. 22-00316), that may be directly affected by this Court's decision in this appeal.

## JURISDICTIONAL STATEMENT

For the reasons explained below, the Court of International Trade properly

held that it lacked subject matter jurisdiction over the underlying matter and

dismissed the case on November 15, 2022.  Defendants-Appellees U.S.

International Trade Commission and Acting Secretary Katherine M. Hiner

(collectively, "the Commission") agree with Plaintiffs-Appellants, Amsted Rail

Company, Inc. ("ARC"), ASF-K de Mexico S. de R. L. de C.V. ("ASF-K"), Strato,

Inc. ("Strato"), and TTX Company ("TTX") (collectively, "Amsted") that this

Court has jurisdiction to review the final decision of the Court of International

Trade under 28 U.S.C. § 1295(a)(5).[1]

## STATEMENT OF THE ISSUE

Amsted challenges the decision of the Court of International Trade in

*Amsted Rail Co. v. United States Int'l Trade Comm'n*, 600 F. Supp. 3d 1308 (Ct.

Int'l Trade Nov. 15, 2022) (Appx1-34), in which the court issued a final opinion

and order dismissing Amsted's amended complaint for lack of subject matter

jurisdiction.

The Commission submits that the sole issue raised in this case is properly

framed as:  Whether jurisdiction was precluded under the Court of International

---

[1] Another U.S. importer, Wabtec Corporation ("Wabtec"), was a plaintiff in the proceedings before the Court of International Trade.  Wabtec, however, did not appeal the lower court's decision to this Court.

Trade's residual jurisdiction provision, 28 U.S.C. § 1581(i), because Amsted will have an adequate remedy under 28 U.S.C. § 1581(c) upon completion of the Commission's final investigations.

## STATEMENT OF THE CASE

This appeal follows the Court of International Trade's dismissal of Amsted's amended complaint for lack of subject matter jurisdiction.  Amsted had invoked the lower court's residual jurisdiction provision, 28 U.S.C. § 1581(i), to request injunctive and declaratory relief to disqualify the named Attorney and Law Firm from continuing to represent the petitioner, the Coalition of Freight Rail Coupler Producers ("Coalition"), based upon an alleged conflict-of-interest in the Commission's ongoing investigations of *Certain Freight Rail Couplers and Parts Thereof from China and Mexico*, USITC Inv. Nos. 701-TA-682 and 731-TA-1592-1593 ("*FRC II*").[2]  Amsted also requested that the Attorney and Law Firm be enjoined from having access to Amsted's business proprietary information ("BPI") submitted under the *FRC II* administrative protective order ("APO"), alleging that the Attorney and Law Firm had breached the APO in the prior investigations on

---

[2] Consistent with the Court of International Trade's instructions and judicial protective order in place to protect, amongst other things, personal identifiers, we refer to the individual and law firm that are the subject of this action as the Attorney and his Law Firm.

*Freight Rail Coupler Systems and Components from China*, Inv. Nos. 701-TA-670 and 731-TA-1570 ("*FRC I*").[3]

In addition to responding to Amsted's pleadings as requested by the lower court, the Commission moved to dismiss Amsted's complaint and its subsequent amended complaint.

On November 15, 2022, after consideration of the numerous written submissions and oral argument, the lower court dismissed Amsted's amended complaint for lack of subject matter jurisdiction and entered judgment in favor of the Commission. *Amsted*, 600 F. Supp. 3d 1308 (Appx1-34). Subsequently, the lower court denied Amsted's motion for injunction pending appeal. Appx36-50. Amsted's appeal to this Court followed.

---

[3] On appeal, Amsted has abandoned its APO breach claim, which was one of the key claims in the litigation before the Court of International Trade, and which, as discussed below, was the basis upon which the lower court issued a temporary restraining order ("TRO") staying the release of BPI to the Attorney and his Law Firm. *See* Amsted's Corrected Opening Brief at 18 n.3 (ECF31) ("AmstedBr"). Although Amsted now focuses only on its disqualification claim, we have included some discussion regarding the APO breach claim in our recitation of the procedural background for the sake of completeness, particularly in light of Amsted's inclusion of this issue in its discussion of the facts.

## STATEMENT OF THE FACTS

**I.    The Commission's Proceedings**

**A.    The Prior Investigations on Freight Rail Couplers from China**

On September 28, 2021, the Attorney, on behalf of the Coalition, filed antidumping and countervailing duty petitions in *FRC I*, covering freight rail coupler systems and components from China.  The petitioning Coalition originally consisted of domestic producers McConway & Torley LLC ("M&T") and ARC. *See FRC I,* Inv. Nos. 701-TA-670 and 731-TA-1570 (Final), USITC Pub. 5331 at I-1 (July 2022).

On October 6, 2021, seven days after the filing of the petitions, and within the 20-day period for the U.S. Department of Commerce ("Commerce") to determine whether to initiate investigations, ARC withdrew from the petitioning Coalition.[4]  ARC's interests had diverged as it opposed the Coalition's theory of ARC moving domestic production operations to Mexico as evidence of injury. Appx65.  The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO, CLC ("USW"), an association representing unionized workers at ARC, replaced the company as a member of the petitioning Coalition.  Appx1265-1268.  ARC hired

---

[4] After a petition is filed, Commerce has no later than 20 days to examine the accuracy and adequacy of the evidence provided in the petition and determine whether to initiate an investigation.  19 C.F.R. § 351.203(b)(1).

new counsel, who filed an entry of appearance as "a U.S. producer of the domestic like product and a U.S. importer of the subject merchandise," on October 14, 2021. Appx1276-1278.

On October 12, 2021, the Commission issued an APO, which included the Attorney as well as counsel for respondent interested parties, importers Wabtec and Strato.[5][6]  Appx1269-1271, Appx1274-1275.  Not then, nor at any time during the *FRC I* proceedings, did ARC or any other party object to the Attorney's access to BPI under the APO or their continued representation of the Coalition.

In November 2021, the Commission issued its preliminary determinations ("Views"), finding that there was a reasonable indication that an industry in the United States was being materially injured by freight rail coupler systems and components from China. *Freight Rail Coupler Systems and Components from China,* 86 Fed. Reg. 64,958 (Nov. 19, 2021).  In its Views, the Commission discussed that nonsubject imports were generally the largest source of supply to the U.S. market during the period of investigation ("POI"), with Mexico being the largest source of nonsubject imports during 2020.  It further stated that in any final

---

[5] Subsequently, the Attorney amended his entry of appearance and filed an updated APO request to reflect that he was no longer with his prior law firm, and that he was currently a shareholder with the Law Firm.  Appx1279-1280.  The Commission Secretary approved the updated APO application.  Appx1281-1282.

[6] ARC's new counsel did not request to be placed on the APO during the preliminary or final phases of *FRC I.*

phase of the investigations it intended to investigate, among other things, the

relationship between ARC and its respective affiliate in Mexico and to what degree

ARC shifted production to Mexico at the expense of its domestic production

operations. *FRC I*, Inv. Nos. 701-TA-670 and 731-TA-1570 (Preliminary), USITC

Pub. 5243 at 34-35 n.207 (Nov. 2021).

The Commission subsequently scheduled the final phase of its

investigations, and a hearing was conducted in May 2022. Strato, TTX, as well as

non-appellee plaintiff Wabtec, actively participated in the final phase as respondent

interested parties while ARC did not file any briefs or appear at the Commission

hearing. *See FRC I*, USITC Pub. 5331 at 3 & Appendix B. In July 2022, the

Commission issued its final determinations, finding that an industry in the United

States was not materially injured or threatened with material injury by reason of

imports of freight rail coupler systems and components from China. *Freight Rail

Coupler Systems and Components from China,* 87 Fed. Reg. 41,144 (July 11,

2022). Despite finding subject import volume and the increase in that volume to

be significant, the Commission did not find significant price effects or a causal

nexus between subject imports from China and the domestic industry's declining

performance. In particular, the Commission noted the Coalition's argument that

ARC had moved some of its production operations to Mexico and found that

nonsubject imports from Mexico correlated with meaningful decreases in domestic

prices to a greater degree than did subject imports. *FRC I*, USITC Pub. 5331 at 29 n.149.

Subsequently, and within the 30-day period to file an appeal challenging the Commission's negative determinations with the Court of International Trade, the Attorney amended the APO to add five attorney applicants and three non-attorney applicants. Appx1283-1345; *see also* 19 U.S.C. § 1516a(a)(1)(C). No appeal was filed, however, and on September 26, 2022, the Attorney certified destruction of all BPI released to the Law Firm under the APO. Appx1346-1351. Counsel for Wabtec and Strato certified their destruction of BPI later, on September 27, 2022 and October 5, 2022, respectively.[7] Appx1352-1355, Appx1368-1379.

## B. Current Investigations on Freight Rail Couplers from China and Mexico

On September 28, 2022, the Attorney, again on behalf of the Coalition (specifically, M&T and USW), filed new petitions covering freight rail coupler imports from China and Mexico, commencing the current underlying investigations, *FRC II*. Appx1356-1360. The next day, September 29, 2022, the Commission issued the APO for the *FRC II* investigations. Appx1361-1364. *FRC*

---

[7] Counsel for Strato, in fact, submitted their certification of destruction of BPI from *FRC I after* the new petitions and their entry of appearance were filed in *FRC II*. Appx1365-1367.

*II*'s scope of imported merchandise and covered subject countries differed from

that of *FRC I*.  *FRC II*, Inv. Nos. 701-TA-682 and 731-TA-1592-1593

(Preliminary), USITC Pub. 5387 at 8-9 (Nov. 2022).

Almost two weeks into the Commission's forty-five day preliminary phase

investigations,[8] ARC and ASF-K raised concerns about the Attorney's and Law

Firm's representation of the Coalition, and their access to BPI in the *FRC II*

investigations.  Specifically, on the morning of Friday, October 14, 2022, ARC and

ASF-K filed a request with the Commission to disqualify the Attorney and his Law

Firm from any further participation in the current *FRC II* investigations based on

an alleged conflict of interest stemming from their prior representation of ARC in

*FRC I* ("disqualification request").[9]  According to ARC and ASF-K, the Attorney's

---

[8] The statute provides the Commission only forty-five days to complete the
preliminary phase of the investigations and reach determinations on whether an
industry in the United States was materially injured, or was threatened with
material injury, by reason of imports of the subject merchandise.
19 U.S.C. § 1673b(a).

[9] Two days earlier, on October 12, 2022, ARC and ASF-K had filed a letter with
the Commission requesting it to disqualify the Attorney and Law Firm and exclude
their access to BPI under the *FRC II* APO; Strato and TTX filed letters in support.
Appx1565-1566.  However, as the Commission's Acting Secretary notified
counsel, the letters were improperly filed and thus not placed on the public docket
because Commission policy requires all correspondence regarding an APO breach
to be kept confidential.  Appx1566, Appx1580-1581; *see* 19 U.S.C. § 1677f(g).
She advised that, per Commission protocol, in order to be considered on the
record, counsel would need to segregate the APO breach allegation from the ethics
violation, with the former being emailed to the Secretary directly.  Appx1566.

and his Law Firm's continued representation of the Coalition violated Rule 1.9(a) of the American Bar Association's Model Rules of Professional Conduct and its analogue, Rule 1.9(a) of the District of Columbia Rules of Professional Conduct. Appx1382-1428.  ARC and ASF-K also separately emailed to the Acting Secretary a request that the Commission rescind the Attorney's and Law Firm's access to BPI under the *FRC II* APO based on allegations that they violated the *FRC I* APO ("exclusion request").  Appx1429-1483.  The requesting parties did not provide any concrete evidence that an APO breach had occurred, but instead, relied on an "inference" that because the Firm had "added . . . nine attorneys and non-attorneys to the Predecessor APO after the Commission had already issued its determinations in the Predecessor Investigations," the Law Firm must have used BPI from *FRC I* as a springboard to file the petitions in *FRC II*.  Appx1434 (emphasis removed).

## II.    Court of International Trade Proceedings

On the same day that ARC and ASF-K filed these requests with the Commission, Amsted commenced an action at the Court of International Trade.  In the complaint and motion for a TRO, Amsted sought to enjoin the Commission from disclosing BPI to the Attorney and Firm until the Commission rendered a decision on the disqualification and exclusion requests.  Appx1005.  Given that this action was filed the Friday before the Commission's scheduled release of BPI under the APO on the following business day, Monday, October 17, 2022, the

*CONFIDENTIAL BUSINESS INFORMATION*
*SUBJECT TO PROTECTIVE ORDER REDACTED*

Court of International Trade was left with no choice but to grant the TRO to permit expedited briefing and argument.[10]  Appx51-52.

In the meantime, the Commission undertook close and careful consideration of the disqualification and exclusion requests, as well as responses it received from the Attorney disputing ARC's and ASF-K's claims.  In his responses, the Attorney maintained that no conflict exists, and that in any event, ARC had expressly waived any conflict.  Appx1484-1542.  The Attorney also unequivocally stated that no breach of the APO had occurred and explained that his Law Firm's amendments to the *FRC I* APO after the final determinations were issued were consistent with the Law Firm's [ *Coalition Response to APO Breach Claim* ] and done to ["*Coalition Response to APO Breach Claim*"] rather than ["*Coalition Response to APO Breach Claim*"].  Appx1543-1545.

On Friday, October 21, 2022, the Commission responded to the disqualification request, stating that it determined that "there {wa}s not good cause under Rule 201.15(a), at this time, to disqualify {the Attorney and his Firm} from participation" in *FRC II* based on the ethical issues Amsted raised.  Appx54-56.  The Commission explained that it "does not adjudicate alleged violations of the Rules of Professional Conduct of a state Bar, nor does it determine whether

---

[10] After granting the TRO, the Court of International Trade deemed Amsted's TRO motion to be a motion for a preliminary injunction.  Appx51-52.

conduct has violated the Model Rules of Professional Conduct of the American Bar Association, such as those described in {its} request." Appx54-56. The Commission further explained that such determinations fell within the purview of the relevant state bar association and noted that no such determination had been made. Appx54-56. Regarding the alleged APO violation, the Acting Secretary determined, after reviewing all pertinent documents and consulting with Commission Staff, that the evidence was insufficient to warrant institution of an APO breach investigation. Appx1568.

Amsted filed an amended complaint and a second motion for a preliminary injunction on October 24, 2022, attacking the merits of the Commission's determinations on the disqualification and exclusion requests and seeking declaratory and injunctive relief to direct the Commission to disqualify the Attorney and his Law Firm, forbid their access to BPI, and dismiss the *FRC II* petitions. Appx58-87, Appx1008-1009. Another round of briefing ensued, including the Commission's motion to dismiss the amended complaint that followed its motion to dismiss the original complaint in which the Commission argued that the court lacked subject matter jurisdiction under section 1581(i) to consider Amsted's claims and that Amsted had failed to state a claim upon which relief could be granted. Appx1009-1011.

The Court of International Trade held oral argument on November 9, 2022. On November 15, 2022, the court issued an order dismissing the case for lack of subject matter jurisdiction, vacating the TRO, and denying any outstanding motions as moot. Appx1-33. In dismissing the case, the lower court analyzed jurisdiction in accordance with this Court's well-established precedent that section 1581(i) jurisdiction cannot be invoked when jurisdiction under another subsection of section 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate. Appx17-30. In reaching its decision, the lower court was guided by *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378 (1981), in which the Supreme Court held that disqualification denial orders were within "the large class of orders that are indeed reviewable on appeal after final judgment," and *Shakeproof Industrial Products Division of Illinois Tool Works, Inc. v. United States*, 104 F.3d 1309, 1313 (Fed. Cir. 1997), in which this Court found "substantial force" to the suggestion that judicial review over a disqualification issue was "premature." Appx21-29. Discussing these and other relevant cases, the lower court found that Amsted failed to meet its burden to demonstrate how the remedy under section 1581(c) would be manifestly inadequate. Appx17-29. Rather, if on review of the Commission's final determinations under section 1581(c), the court were to find the Commission's actions to be unreasonable, the court would have the ability to remand the matter

for futher investigation as appropriate.  Appx28-29.  Because an adequate remedy under 28 U.S.C. § 1581(c) would be available to Amsted at the conclusion of the investigations, the Court of International Trade held that it did not have jurisdiction under section 1581(i).[11]  Appx32.

On November 14, 2022, the Commission reached affirmative preliminary determinations in *FRC II*, resulting in continuation of the investigations.  After the TRO was lifted on November 15, 2022, no party objected to the Commission's final release of BPI on November 25, 2022 to all counsel on the *FRC II* APO service list, including to the Attorney and his Law Firm.  Appx1562.

Rather than immediately appealing the Court of International Trade's final order, Amsted instead filed at the Court of International Trade yet another motion for an injunction – "pending appeal" for an appeal that it had not yet filed – on the evening of Friday, November 18, 2022.  Appx1012-1013.  After more briefing and oral argument, the lower court denied Amsted's motion on December 20, 2022, concluding that none of the four factors for injunctive relief were satisfied.  Appx36-50.  Specifically, it held that Amsted failed to show a likelihood of

---

[11]  The Court of International Trade also determined that Amsted failed to meet its burden in establishing jurisdiction under the two other alternative bases set forth in the amended complaint – through the lower court's "plenary authority and responsibility to supervise professional conduct" over any attorney who is "a member of the Bar of this Court of International Trade," and as a petition for a writ of mandamus.  Appx30-32 (citation omitted).

success on the merits with respect to its assertion of jurisdiction under section 1581(i) and that it failed to demonstrate irreparable harm without an injunction. In addition, the court, noting that the Coalition would be prematurely and irreversibly deprived of its counsel before the Commission without a decision squarely addressing the merits of the conflict-of-interest claim, held that the balance of equities and public interest weighed in favor of denial. Appx42-49.

## SUMMARY OF THE ARGUMENT

The Court should affirm the Court of International Trade's decision and judgment. Amsted fails to satisfy its burden that jurisdiction under section 1581(i) lies over its challenge to the Commission's denial of disqualification of the Attorney and Law Firm. That is because the Commission's denial of Amsted's disqualification request is exactly the sort of procedural determination that can be brought and adequately reviewed in an action challenging final Commission determinations pursuant to 28 U.S.C. § 1581(c), in accordance with Congress' carefully crafted remedial scheme.

Section 1581(i) jurisdiction is a residual provision, and its use is strictly limited to instances when adequate relief is unavailable under any other subsection of section 1581. Amsted argues that review under section 1581(c) is not available and that its right to "untainted" proceedings will be destroyed if it is required to wait until the end of the Commission's final investigations. But Amsted's

arguments fail on the merits and are at odds with its own numerous statements

recognizing the availability of section 1581(c) review. They also fall far short of

establishing the *indelible* taint that would preclude effective review under 1581(c)

and render such relief manifestly inadequate. *See Firestone*, 449 U.S. 368. As the

Supreme Court explained in finding that a district court's disqualification denial

was not immediately appealable, the denial order "plainly falls within the large

class of orders that are indeed reviewable on appeal after final judgment" because

meaningful review of a decision whether to disqualify an attorney "will not perish

unless immediate appeal is permitted." *Id*. at 377-78. This concept does not hinge

on whether the decision not to disqualify is made by a trial court or by an

administrative agency, as Amsted contends. Indeed, Amsted's allegations and

arguments of taint fail to demonstrate how review of the Commission's

disqualification determination would perish absent immediate review. To the

contrary, this claim, as well as any other procedural claims that Amsted believes to

have adversely affected the results of the investigations, can be reviewed by the

Court of International Trade upon the conclusion of the Commission's

investigations.

    Equally unavailing is Amsted's grasping and belated attempts to meet its

burden of establishing jurisdiction under section 1581(i). The Court should reject

Amsted's claim that the Court of International Trade erred when it did not allow it

leave to amend its already amended complaint and its impermissible efforts to
introduce new facts from the record of another case into this appeal. Amsted never
filed a motion for leave for such purposes with the lower court pursuant to the
Court of International Trade Rules, and it fails to point to any mandatory authority
requiring the lower court to have allowed leave under such circumstances rather
than entering judgment after dismissal, as it did here. In the face of Amsted's own
inaction, this Court should not now grant Amsted's late request to allow such an
amendment. The proposed amendment, in any event, fails to cure the "defects in
the jurisdictional facts themselves," and therefore would not be permissible. *Mills
v. State of Me.*, 118 F.3d 37, 53 (1st Cir. 1997). Indeed, rather than demonstrate an
"indelible" taint on the Commission's proceedings, the additional facts relate only
to Amsted's claims that there might be "fruits of a breach of confidence" that
simply do not add up to a finding of manifest inadequacy. *Firestone*, 449 U.S. at
376.

    Finally, jurisdiction aside, this Court should, in the alternative, affirm
dismissal of Amsted's amended complaint for failure to state a claim upon which
relief can be granted. The Commission possesses broad administrative discretion
in making procedural determinations that permit it to discharge their multitudinous
duties while carrying out its statutory mandate of determining injury to the
domestic industry. In light of this discretion and given the absence of any

16

conclusive determination of a proven conflict of interest or any requirement on the part of the Commission to adjudicate such issues, Amsted fails to plead a plausible claim that the Commission acted arbitrarily or capriciously in deciding that there was "not good cause at this time to disqualify" the Attorney and Law Firm.

## ARGUMENT

### I. Standard of Review

The Court reviews Court of International Trade decisions to grant a motion to dismiss for lack of subject matter jurisdiction *de novo* as a question of law. *ARP Materials Inc. v. United States*, 47 F.4th 1370, 1376 (Fed. Cir. 2022); *see also Wanxiang Am. Corp. v. United States*, 12 F.4th 1369, 1373 (Fed. Cir. 2021); *TR Int'l Trading Co. v. United States*, 4 F.4th 1363, 1367 (Fed. Cir. 2021); *Erwin Hymer Grp. N.A., Inc. v. United States*, 930 F.3d 1370, 1374 (Fed. Cir. 2019). Although the Court reviews the jurisdictional determination of the lower court *de novo*, it "give{s} great weight to the informed opinion of the CIT and it is nearly always the starting point of {the Court's} analysis." *Juancheng Kangtai Chem. Co. v. United States*, 932 F.3d 1321, 1326 (Fed Cir. 2019). The plaintiff bears the burden of pleading and establishing jurisdiction. *Wanxiang*, 12 F.4th at 1373; *TR Int'l Trading Co.*, 4 F.4th at 1367.

## II.    The Court of International Trade Lacked Subject Matter Jurisdiction Under Section 1581(i)

The lower court correctly held that it lacked jurisdiction under section 1581(i) because jurisdiction under another subsection of 1581 – specifically section 1581(c) – will be available to Amsted if it is in fact aggrieved at the completion of the Commission's injury investigations in *FRC II*.  Moreover, as the lower court determined, the remedy provided under section 1581(c) is not "manifestly inadequate."  Appx17-30.

### A.    Statutory Framework

Under the statutory scheme, the Commission is charged with determining whether the imported merchandise in question either materially injures or threatens to materially injure the domestic industry.  19 U.S.C. §§ 1671d(b)(1) & 1673d(b)(1).  The Court of International Trade, in turn, reviews the Commission's final determinations under 28 U.S.C. § 1581(c).

Section 1581(i), which Amsted instead invokes as the jurisdictional basis over its action, is a "residual" grant of jurisdiction over all civil actions against the United States for

> "(A) revenue from imports or tonnage; (B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue; (C) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or (D) administration and enforcement with respect to the matters referred to in

subparagraphs (A) through (C) of this paragraph and subsections (a) through (h) of this section."

28 U.S.C. § 1581(i)(1).

The availability of jurisdiction through section 1581(i), however, is "strictly limited." *Erwin Hymer*, 930 F.3d at 1374.  Indeed, section 1581(i) itself states, in pertinent part, that "{t}his subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable … by the Court of International Trade under section 516A(a) of the Tariff Act of 1930." And that is because an "overly broad interpretation" of section 1581(i) would otherwise "threaten to swallow the specific grants of jurisdiction contained within the other subsections." *Erwin Hymer*, 930 F.3d at 1374 (quoting *Norman G. Jensen, Inc. v. United States*, 687 F.3d 1325, 1329 (Fed. Cir. 2012)).  Accordingly, this Court has long held that residual jurisdiction under subsection 1581(i) is unavailable to any litigant if jurisdiction is or could have been available under any other subsection of 1581, unless such other relief would be manifestly inadequate. *Wanxiang*, 12 F.4th at 1373 (citing *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987); *ARP Materials*, 47 F.4th at 1377; *Erwin Hymer*, 930 F.3d at 1374-75; *Shakeproof*, 104 F.3d at 1312.

"Thus, when assessing jurisdiction under § 1581(i), {the Court} primarily consider{s} (1) whether jurisdiction under a subsection other than § 1581(i) was available, and (2) if so, whether the remedy provided under that subsection is

19

'manifestly inadequate.'" *Wanxiang*, 12 F.4th at 1373 (citing *Erwin Hymer*, 930 F.3d at 1375). A remedy is manifestly inadequate if it is "an exercise in futility," meaning it is "incapable of producing any result." *Juancheng,* 932 F.3d at 1327.

In this case, the Court of International Trade correctly found that jurisdiction under another subsection of 1581 (*i.e.,* 1581(c)) was available and that review under subsection (c) would not be manifestly inadequate. Appx17-30. Amsted, however, raises two arguments for why jurisdiction over its disqualification claim lies under section 1581(i). First, Amsted contends that section "1581(c) does not permit judicial review of agency decisions regarding attorney disqualification." AmstedBr at 40-43. Second, Amsted argues that it would be manifestly inadequate to wait until the completion of the Commission's determinations and seek review under section 1581(c) because of an inherent "taint" from the conflicted Attorney's participation in *FRC II* that, in its view, cannot be undone *ex post facto*. *Id.* at 31-40. As discussed below, Amsted's contentions do not withstand scrutiny, and it fails to meet its burden demonstrating that jurisdiction under another section in 1581 was either unavailable or manifestly inadequate.

### B. Section 1581(c) Jurisdiction Will Be Available After the Commission's Final Determinations

Should the Commission reach affirmative final determinations, Amsted will have an available avenue under section 1581(c) to seek relief over the Commission's decision not to disqualify the Attorney and Law Firm.

Section 1581(c) provides that "{t}he Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A or 517 of the Tariff Act of 1930," including review of the Commission's final injury determinations.  The *procedural correctness* of the Commission's determinations, not just the merits, are subject to judicial review under section 1581(c).  *Miller*, 824 F.2d at 963-64 (holding that a challenge to procedural determinations on the continuance of a review and publication of results after expiration of the statutory time limits are reviewable under section 1581(c)).  This is confirmed by the statute's legislative history, which makes clear that "*any preliminary administrative action which, in the course of the proceeding, will be, directly or by implication, incorporated in or superceded by any such determination*, is reviewable exclusively as provided in section 516A.'"  *M S Int'l, Inc. v. United States*, 425 F. Supp. 3d 1332, 1336 (Ct. Int'l Trade 2020) (quoting H.R. Rep. No. 96-1235, at 48 (1980)) (emphasis added); *see also Confederacion de Asociaciones Agricolas del Estado de Sinaloa v. United States*, 459 F. Supp. 3d 1354, 1362 n.10 (Ct. Int'l Trade 2020), *jurisdictional analysis aff'd*, 32 F.4th 1130, 1138 (Fed. Cir. 2022) (quoting *M S Int'l*).

Consequently, "{w}hile Congress contemplated that there would be some civil actions relating to an antidumping duty proceeding which could be heard pursuant to 28 U.S.C. § 1581(i)," it intended that this section "*should not be used*

to permit the appeal of a procedural determination, but rather, that all procedural considerations should be decided by this court *when the final agency determination is made*." *Koyo Seiko Co., Ltd. v. United States*, 715 F. Supp. 1097, 1100 (Ct. Int'l trade 1989) (quoting *PPG Indus. Inc. v. United States*, 525 F. Supp. 883, 885 (Ct. Int'l Trade 1981)) (emphasis added). By "prescrib{ing} a particular track for a claimant to follow, . . . and particularly when the claim is against the United States," Congress intended that "the remedy will be exclusive." *Nat'l Corn Growers Ass'n v. Baker,* 840 F.2d 1547, 1558 (Fed. Cir. 1988); *see also Sunpreme Inc. v. United States*, 892 F.3d 1186, 1193 (Fed. Cir. 2018) (circumvention of the "established administrative procedure" will "undermine the remedial scheme established by Congress").

Amsted does not dispute that the Commission's determination not to disqualify is a preliminary procedural determination. It nonetheless argues that section 1581(c) jurisdiction is not an "available" remedy because disqualification claims are "wholly collateral to" and do not "bear in the slightest on" the Commission's final determinations. AmstedBr at 40-43. Amsted's claims, as an initial matter, are at odds with its own contradictory statements made elsewhere to the Commission, the Court of International Trade, and to this Court. Appx1127-1131 (stating that the alleged attorney-client conflict was "integrally linked" to the Commission's proceedings); Appx157-158 (agreeing that it could seek review of its

22

disqualification claim under section 1581(c)); Appellants' Emer. Mot. to Expedite

at 17 (ECF 26)("If the agency's final determination were issued before this Court's

decision, a civil action under Section 1581(c) would become possible."); AmstedBr

at 37 ("The harm from an order wrongfully denying disqualification, however, will

have irreparably altered the course the proceedings, the litigation strategy, and the

evidentiary record."); *id.* at 57 ("{The attorney-client confidences} is exactly the

sort of information the Coalition can use – and is now using – in the Current

Investigations.").

Amsted's position is also untenable in the face of U.S. Supreme Court

decisions holding the exact opposite, that determinations not to disqualify (and to

disqualify) counsel are not wholly collateral, but rather are enmeshed with

plaintiffs' causes of action. *See Firestone*, 449 U.S. 377; *Richardson-Merrell v.*

*Koller*, 472 U.S. 424, 439 (1985). Specifically, in *Firestone*, the Supreme Court,

confronted with allegations of taint similar to those alleged by Amsted, rejected the

argument that disqualification denial orders are "independent of the cause itself"

and separate from the merits such that they constitute collateral orders subject to

immediate appeal. 449 U.S. at 375. The Supreme Court reasoned that, to the

contrary, "the propriety" of such an order "will often be difficult to assess until its

impact on the underlying litigation may be evaluated, which is normally only *after*

*final judgment.*" *Id*. at 377 (emphasis added). It consequently ruled that a refusal to disqualify counsel:

> plainly falls within the large class of orders that are indeed reviewable on appeal after final judgment, and not within the much smaller class of those that are not. … Permitting wholesale appeals on that ground not only would constitute an unjustified waste of scarce judicial resources, but also would transform the limited exception carved out in *Cohen* {*v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)} into a license for broad disregard of the finality rule imposed by Congress in {28 U.S.C.} § 1291. This we decline to do.

*Id*. at 377-78; *see also Richardson*, 472 U.S. at 439 (explaining that "orders disqualifying counsel in civil cases are not completely separate from the merits of the action" and thus are not subject to immediate appeal).

Consistent with the Supreme Court's holdings, this Court in *Shakeproof*, after noting the availability of review under section 1581(c) over final determinations, expressed "serious doubts" that the Court of International Trade possessed section 1581(i) jurisdiction over a complaint seeking to compel Commerce to disqualify a law firm from participation in an administrative review on grounds that a member of the law firm previously had access to proprietary information submitted by plaintiff in the original antidumping investigations. 104 F.3d at 1313. This Court found "substantial force" to the argument that an interlocutory request for judicial review over Commerce's refusal to disqualify – a preliminary administrative action – was "premature." *Id*. at 1312-13. While this

24

Court affirmed the lower court's dismissal of the case on grounds other than jurisdiction, *Shakeproof* is nevertheless instructive, and is in line with the statute's legislative history and case law, all of which recognize the availability of section 1581(c) over preliminary procedural determinations when the final agency determination is made.

Because Amsted's disqualification request will be incorporated in or superseded by the Commission's final determinations, section 1581(c) is indeed an available remedy for Amsted upon completion of the Commission's investigations should Amsted be aggrieved by the Commission's ultimate determinations. Amsted's reliance on *NEC Corp. v. United States*, 151 F.3d 1361 (Fed. Cir. 1998), to claim otherwise is unavailing.  Importantly, *NEC* did not rest its decision on a finding that jurisdiction under section 1581(c) was unavailable, but rather that the remedy provided under that subsection was "manifestly inadequate."  In any event, *NEC* is inapposite because it dealt with interlocutory review of an investigation that was allegedly "preordained" due to Commerce's "impermissible prejudgment." This Court found that "NEC {wa}s attempting to adjudicate an issue that goes to the very heart of the administrative system – neutrality – using the only adequate avenue available."  *Id.* at 1368-69.  In contrast, Amsted is not questioning the Commission's impartiality here nor is it arguing that the *FRC II* investigations were preordained from the start.  Appx20-21; *see also Intercontinental Chem., LLC v.*

25

*United States*, 483 F. Supp. 3d 1232, 1241-42 (Ct. Int'l Trade 2020) (finding

plaintiff's claims to be different from the manifest inadequacy that existed in *NEC*,

which found that it would have been a "fool's errand" to challenge a "preordained

conclusion" by Commerce); *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v.*

*United States*, 986 F. Supp. 2d 1381, 1386-87 (Ct. Int'l Trade 2014)

(distinguishing *NEC* because plaintiff's challenge in that case sought to stop an

allegedly preordained investigation at its outset).  Rather, Amsted is challenging a

procedural determination, which can, and indeed is required to be, reviewed upon

the conclusion of the Commission's final investigations under section 1581(c).

### C.    The Remedy Available Under Section 1581(c) Is Not Manifestly Inadequate

Amsted also fails to satisfy its burden to demonstrate that the remedy

available under section 1581(c) is manifestly inadequate.  *Miller*, 824 F.2d at 964.

Amsted maintains that it cannot wait until the Commission's final determinations

to seek review over the Commission's disqualification denial because its right to

untainted proceedings is irreparable after the fact.  AmstedBr at 31-40.

As with the availability prong discussed above, however, Amsted cannot

overcome the reasoning provided by the Supreme Court in *Firestone*, that

meaningful review of decisions regarding attorney disqualification claims would

not be futile by waiting until final judgment to appeal.  449 U.S. at 377-78.  In

*Firestone*, the Supreme Court, in holding that disqualification denials are not

appealable under the collateral order exception to the final judgment rule, found that the "decision whether to disqualify an attorney . . . will rarely, if ever, represent a final rejection of a claim of fundamental right that cannot effectively be reviewed following judgment on the merits," or that the "opportunity for meaningful review will perish unless immediate appeal is permitted." *Firestone*, 449 U.S. at 377.  It admonished that "{p}ermitting wholesale appeals on {the mere ground that a disqualification denial order may be erroneous} not only would constitute an unjustified waste of scarce judicial resources, but also would transform the limited exception . . . of the finality rule imposed by Congress." *Id*. at 378.

Like the finality rule in *Firestone*, the "manifestly inadequate" standard has been strictly construed by this Court with an eye to protecting the broader statutory scheme in allowing for judicial review upon final agency determinations.  Such limits "are necessary to 'preserve{} the congressionally mandated procedures and safeguards provided in the other subsections {of section 1581}." *Erwin Hymer*, 930 F.3d at 1374 (quoting *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992)).  Accordingly, this Court has repeatedly held that section 1581(i) jurisdiction cannot be invoked over challenges that could have been brought under another section of 1581 upon final agency action.  *See, e.g., Wanxiang*, 12 F.4th at 1374-75 (an importer cannot successfully assert jurisdiction

under 1581(i) to protest having to pay duties and penalties when they could have sought relief under another remedy); *Juancheng*, 932 F.3d at 1328-29 (section 1581(i) jurisdiction is unavailable when plaintiff's protest to Commerce's assessment of antidumping duties could have been brought under section 1581(c)); *Erwin Hymer*, 930 F.3d at 1376 (rejecting artful pleading to expand the jurisdictional scope of section 1581(i), which Congress limited as a statutory basis for the court's jurisdiction over protests); *Sunpreme*, 892 F.3d at 1193 (rejecting plaintiff's efforts to recast a scope dispute as a challenge to an alleged *ultra vires* action to create section 1581(i) jurisdiction).

Regarding the specific challenge at issue here – over an agency's denial of a disqualification request – this Court has expressly questioned whether judicial review under section 1581(c) after the conclusion of the administrative review would be manifestly inadequate, stating:

> We have serious doubts that judicial review of the disqualification issue would be manifestly inadequate if it were postponed until Commerce's final decision on the first review of the antidumping duty order. For that reason, we believe there is substantial force to the government's suggestion that Shakeproof's request for judicial review in this case was premature.

*Shakeproof*, 104 F.3d at 1313.

The Court of International Trade likewise has applied a high bar that parties such as Amsted must overcome for a matter to be reviewed immediately by the

court, and has generally declined to exercise section 1581(i) jurisdiction except to "stop an allegedly unnecessary or ultra vires administrative proceeding before plaintiffs were burdened with them." *Borusan*, 986 F. Supp. 2d at 1388-89; *see e.g.*, *Dofasco Inc. v. United States*, 326 F. Supp. 2d 1340, 1346 (Ct. Int'l Trade 2004), *aff'd*, 390 F.3d 1370 (Fed. Cir. 2004) (finding section 1581(i) jurisdiction to consider "legality of a pending administrative review based on the allegedly unlawful commencement thereof"); *Carnation Enters. v. U.S. Dep't of Com.*, 719 F. Supp. 1084 (Ct. Int'l Trade 1989) (holding section 1581(i) jurisdiction to be proper where the plaintiffs challenged the legal validity of the order underlying the administrative reviews to which plaintiffs were named mandatory respondents).

Notwithstanding that an ultra vires scenario does not apply here, Amsted insists that section 1581(i) jurisdiction is appropriate over its disqualification claim, urging the Court to follow the lower court's decades-old outlier decision, *Makita Corp. v. United States*, 819 F. Supp. 1099 (Ct. Int'l Trade 1993). AmstedBr at 32-33. Jurisdiction, however, was never contested in *Makita* nor was it analyzed under the significant limitations placed on section 1581(i) jurisdiction recognized and adhered to by this Court. *See* 819 F. Supp. at 1103-04 (simply stating that "{t}his is a forum which has jurisdiction over such matters"). Moreover, *Makita* was not binding on the Court of International Trade, let alone on

this appellate Court,[12] and was decided prior to *Shakeproof*, in which this Court

expressed skepticism about jurisdiction in cases involving such disqualification

matters.

In any event, as the lower court found in this case, *Makita* is also

distinguishable in other ways. Appx25-27. That case involved an attorney that

had represented plaintiff before the Commission in a proceeding under 19 U.S.C.

§ 1337, and then its adversary in a subsequent antidumping investigation before

Commerce. 819 F. Supp. 1099. In addition, plaintiff in *Makita* had furnished

affidavits and live testimony that detailed the precise nature of the information that

the potentially conflicted attorney had acquired. *See id.* at 1102. Unlike the

attorney client conflict at issue in *Makita*, Amsted's allegations before the lower

court demonstrated that the Attorney here represented the same client – a coalition

consisting of domestic producer(s) and union workers – across the prior

investigations, *FRC I*, and the current investigations, *FRC II*, which, as the lower

court found, did not establish sufficient certainty of attorney misconduct to

necessitate relief under section 1581(i). Appx27. Notably, in determining whether

disqualification was appropriate, the court in *Makita* did not only focus on the

harm caused by counsel's continued participation, but also accounted for other

---

[12] Decisions by the Court of International Trade are not binding precedent. *See Algoma Steel Corp. v. United States*, 865 F.2d 240, 243 (Fed. Cir. 1989).

considerations such as "the client's right to counsel of choice and also for the complications which can develop in litigation when disqualification occurs" – which the court found did not weigh against disqualification. *Id*. at 1105-07. The court observed that neither the conflicted attorney nor the company represented by conflicted counsel had entered their appearance before the court. Moreover, Commerce had not alleged any impediment to its investigations. *See id.* On the other hand, the Coalition has opposed the disqualification request before the Commission and throughout this litigation, demonstrating its interest in asserting its right to have the Attorney, whom it has entrusted for representation, as its counsel of choice. In short, *Makita* does not support a finding of section 1581(i) jurisdiction over Amsted's action.

Amsted also relies upon cases involving mandamus review, arguing that they demonstrate how "the findings of § 1581(i) jurisdiction and irreparable harm in *Makita* make eminent sense."[13] AmstedBr at 33-36. But far from establishing a

---

[13] The Court of International Trade held that Amsted's "relief cannot lie in mandamus." Appx31-32. While Amsted states its disagreement with the lower court, it did not appeal or provide any developed arguments on the lower court's denial of this equitable remedy. AmstedBr at 38. Consequently, any challenge to the lower court's decision on this issue is waived. *Smithkline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319-20 (Fed. Cir. 2006) (concluding that an argument was waived even though "there {we}re various places in its opening brief where {appellant} alluded" to the relevant argument because "mere statements of disagreement with the district court as to the existence of factual disputes do not amount to a developed argument"). In particular, Amsted fails to address, let alone show, all the elements necessary to demonstrate entitlement to a

31

rule that section 1581(i) jurisdiction is appropriate for disqualification issues, those

cases simply confirm what *Firestone* already acknowledged – that writs "might" be

an option for review of an order regarding disqualification, but only in

"*exceptional* circumstances."[14]  *Firestone*, 449 U.S. at 378 n.13 (emphasis added).

In fact, one of the cases cited by Amsted, *In re University of South Florida Board*

*of Trustees*, 455 F. App'x 988 (Fed. Cir. 2012), demonstrates how truly

"exceptional" a disqualification matter must be to warrant immediate review.  In

*South Florida Board of Trustees*, this Court denied a petition for a writ of

mandamus seeking review over a district court's decision not to disqualify a law

firm despite the *existence* of a "concurrent conflict of interest."  Considering other

factors such as the "potential prejudice . . . to the client," and "significant delay in

proceedings," this Court held that the petitioner failed to meet its burden in

establishing "a clear and indisputable right to mandamus relief."  *Id*. at 990-92.

---

writ.  *Timken Co. v. United States*, 893 F.2d 337, 339 (Fed. Cir. 1990) (petitioner must prove the following elements in order to assert successfully a petition for a writ of mandamus:  (1) a "clear duty" on the part of the defendant to perform the act in question; (2) a "clear right" on the part of the plaintiff to demand the relief sought; and (3) an absence of an adequate alternative remedy)).

[14] Notably, in *Firestone*, the Supreme Court stated that it "need not be concerned with the availability of such extraordinary procedures" because "petitioner ha{d} made no colorable claim that the harm it might suffer if forced to await the final outcome of the litigation before appealing the denial of its disqualification motion is any greater than the harm suffered by any litigant forced to wait until the termination of the trial before challenging interlocutory orders it considers erroneous."  449 U.S. at 378 n.13.

That even a confirmed existence of a conflict did not rise to meet the high bar in seeking relief through a writ of mandamus significantly undermines Amsted's arguments that the *potential* harm caused through unproven allegations of a non-concurrent conflict is so irreparable that review under section 1581(c) is manifestly inadequate.  Rather, it appears to be the opposite side of the coin – the harm of being denied counsel of choice – that this Court has found to be irreparable.  *See In re Shared Memory Graphics LLC*, 659 F.3d 1336, 1340 (Fed. Cir. 2011) (granting request for mandamus relief to review the district court's decision to disqualify a conflicted attorney, reasoning that "{b}y the time an appeal here could be taken, the trial would be over, and SMG would have gone through the litigation without the counsel of its choice").

Amsted's other cited mandamus cases further highlight how this matter does not rise to the level of irreparable harm warranting extraordinary interlocutory relief.  For instance, in *Yablonski v. United Mine Workers of America*, 454 F.2d 1036 (D.C. Cir. 1971), the Court of Appeals for the District of Columbia Circuit granted a petition for relief to exact compliance with its prior mandate to vacate the district court's denial of a motion to disqualify.  The court noted that in the first appeal in which it issued the order to vacate, "jurisdiction was not seriously questioned," and that, in any event, the facts differed materially from cases that had reached different conclusions because "disqualification was predicated

additionally upon significant impingement on a specific legislative policy." *Id*. at

1038 n.9. Specifically, the suit was brought by a dissident union group under

Section 501(b) of the Labor Management Reporting and Disclosure Act of 1959,

for an accounting and restitution of funds allegedly misspent by union officials.

The same firm representing the union group was also at the same time representing

in other lawsuits the union group's president, one of the defendants charged with

the improper expenditures. *See id.* at 1039-40. The court concluded that the

objectives of the statute would be better served by having independent new

counsel. *See id.* at 1040. In the subsequent appeal following its prior order to

vacate, the court granted mandamus relief, finding that the new representation of

the union, consisting of the union's general counsel and three members of his staff

who were also accused of wrongdoing, did not differ essentially from the initial

arrangement. *See id.* at 1040.

Similar instances of clear impropriety where counsel represented adverse

parties at the same time were at issue in *Dresser*, *American Airlines*, and *Unified

Sewage*.[15] *See In re Dresser Indus.*, 972 F.2d 540 (5th Cir. 1992) (writ granted to

---

[15] Amsted also relies on *Merle Norman Cosmetics, Inc. v. U.S. District Court of California*, 856 F.2d 98 (9th Cir. 1988) and *Grimes v. District of Columbia*, 794 F.3d 83 (D.C. Cir. 2015), but those cases are inapposite and do not involve grants of interlocutory review. To the contrary, in *Grimes*, the Court of Appeals for the District of Columbia Circuit reviewed plaintiff's disqualification claim upon a final order by the district court granting summary judgment. And in *Merle Norman*, the Court of Appeals for the Ninth Circuit, finding that the district court's decision was

review a "clear impropriety" that existed when a law firm sued its own client, which it concurrently represented in other matters); *In re American Airlines, Inc.*, 972 F.2d 605 (5th Cir. 1992) (finding special circumstances sufficient to place the disqualification dispute, concerning overlapping representation of directly adverse parties in the same case, within "that narrow class of cases warranting mandamus review"); *Unified Sewage Agency of Wash. Cty. v. Jelco Inc.*, 646 F.2d 1339 (9th Cir. 1981) (mandamus review of case in which attorney undertook representation adverse to a present client).

In stark contrast to the "exceptional" circumstances detailed above, the Attorney and Law Firm here are not representing adverse clients at the same time, and it is disputed whether the Attorney and his Law Firm are conflicted in their representation of the Coalition in the first instance.  It is also questionable whether disqualification would be warranted even if a conflict is found.  Indeed, the undisputed facts show that Attorney and Law Firm is, and always has been – since the prior *FRC I* investigations and through the present *FRC II* investigations – representing the Coalition of domestic producers.  While ARC, a U.S. producer, was once a part of the Coalition during a brief period at the beginning of the prior *FRC I* investigations during which the Attorney represented the firm, it withdrew

---

not clearly erroneous and that the denial of disqualification was "neither new nor important," denied petitioners' petition for writ of mandamus.  AmstedBr at 34.

from the Coalition seven days after the filing of the *FRC I* petitions and replaced the Attorney with new counsel because its interests had diverged from that of the Coalition. Appx64-65. To the extent that ARC is alleging that it is now in a position adverse to the Coalition in the current *FRC II* investigations, it had executed an advance waiver agreement covering potential future conflicts with the Attorney. Appx1484-1494; s*ee Shared Memory Graphics*, 659 F.3d at 1338 (finding that an advance conflicts waiver was intended to bar client from seeking disqualification of counsel). At bottom, Amsted fails to demonstrate, through case law and the facts of this case, that review under section 1581(c) at the end of the Commission's investigations over the potential "taint" resulting from the Attorney and Law Firm's continued representation would meet the exacting standard of manifest inadequacy – in other words, that it would be "an exercise in futility," that the investigations were "preordained," or indelibly tainted such that the "opportunity for meaningful review will perish unless immediate appeal is permitted." *Juancheng,* 932 F.3d at 1327; *NEC*, 151 F.3d at 1368; *Firestone*, 449 U.S. at 377-78.

Amsted questions what can be done "*ex post facto*," expressing concern about unfair advantage in agency proceedings, particularly where "as here, the agency expressly abjures its ability or willingness to address a conflicted representation in any remand, present or future." AmstedBr at 37-38. But

Amsted's concerns are unfounded and based upon a misreading of the

Commission's response to ARC's and ASF-K's disqualification request.  Rather

than "abjure" to address a conflicted representation, the Commission carefully

crafted its response, stating that it determined "that there {was} not good cause, . . .

*at this time*, to disqualify."  Appx54-56.  In doing so, the Commission left open the

possibility that if the relevant authorities were to find a conflict, that it would

account for that finding in determining whether the Attorney should "be suspended

or barred from practicing before the Commission, or have imposed on him such

lesser sanctions as the Commission deems appropriate" under 19 C.F.R.

§ 201.15(a).[16]  Appx54-55 (emphasis added).

Moreover, the Commission has the ability to rectify any "taint" caused by a

proven conflict of interest in its determinations.  As an initial matter, if the

Commission ultimately issues a final determination finding no material injury or

threat thereof by reason of the allegedly unfair imports, Amsted would not be

---

[16] To the extent that Amsted is arguing that the Commission was legally obligated
to adjudicate the conflict-of-interest claim in the midst of ongoing trade
proceedings, it fails to point to any statutory or regulatory obligation of the
Commission to do so.  *See Shakeproof*, 104 F.3d at 1313-14 (finding no legal error
in Commerce's refusal to apply the D.C. Rules of Professional Conduct to the
question of whether a firm should have been disqualified based upon an alleged
conflict of interest).  The Commission, while an expert in trade injury, is not an
expert in the complex area of conflict-of-issue rules.  Consequently, it was
reasonable for the Commission not to adjudicate, in the first instance, Amsted's
conflict-of-interest claim.

aggrieved, highlighting the impropriety of judicial interference at the current

stage.[17]  On the other hand, if the Commission ultimately issues affirmative

determinations, Amsted will be able to appeal that determination under § 1581(c),

and could request a remand if it believed the Commission's determinations were

tainted by a conflict and failure to disqualify.  As the Court of International Trade

noted in its dismissal opinion, "if the court finds the Commission's actions to be

unreasonable, it may remand the matter for further investigation as appropriate."

And, "if after remand the court determines that the agency determination was

tainted by an improper predisposition, the court can again remand for

reconsideration."  Appx21; *see also Koyo Seiko*, 715 F. Supp. at 1099 (rejecting

plaintiffs' arguments that the remedy under section 1581(c) will be inadequate

because Commerce will be so firmly entrenched in its position that it will not

consider plaintiffs' comments fairly).  The Commission would issue a

redetermination that accounted for the lower court's instructions.  *See*, *e.g.*, *Koyo*

*Seiko*, 715 F. Supp. at 1099 (discussing the Commission's statutory mandate of

reconsideration that is "free of the accretions of any private interests, expectations

---

[17] This would not preclude Amsted from raising its grievance with the appropriate Bar Association, or, if it were in fact able to show concrete harm, from bringing a private cause of action against the Attorney and Law Firm. *See Geo Specialty Chem., Inc. v. Husisian*, 951 F. Supp. 2d 32, 37 (D.D.C. 2013) (finding jurisdiction over plaintiff's putative claims that former attorney violated a fiduciary obligation in a trade proceeding, but dismissing case for failure to plead facts supporting a plausible right to relief.)

or equities" in considering an issue anew); *Elkem Metals Co. v. United States*, 193

F. Supp. 2d 1314, 1321 (Ct. Int'l Trade 2002) (finding that the Commission had

the inherent power to reconsider its final determinations to account for fraudulent

information with respect to pricing that had been provided during the original

investigations). Any supposition on Amsted's part as to the potential effectiveness

of a remand does not meet the burden to establish jurisdiction under section

1581(i). *TR Int'l Trading Co.*, 4 F.4th at 1370 ("hypotheticals" are not enough to

carry the burden of demonstrating that section 1581(c) jurisdiction is unavailable

or manifestly inadequate in seeking a scope ruling from Commerce that could

potentially be futile).

### D. The Court of International Trade Properly Held that Amsted's Conflict Allegations Are Too Threadbare to Show Manifest Inadequacy

In light of the foregoing, the Court of International Trade properly held that

Amsted's allegations of attorney misconduct "are too threadbare to meet the more

specific showing {of} manifest inadequacy under § 1581(i)." Appx27; *Miller*, 824

F.2d at 963 ("Where another remedy is or could have been available, the party

asserting § 1581(i) jurisdiction has the burden to show how that remedy would be

manifestly inadequate.").

Amsted nonetheless argues that the lower court erred in four ways:

(1) imposing an "unworkable" jurisdictional standard by requiring it to reveal

attorney-client confidences; (2) not applying a presumption of manifest inadequacy in light of the substantial relationship between the *FRC I* investigations and *FRC II* investigations; (3) relying on *Firestone* and *Shakeproof* as persuasive and instructive authority, respectively; and (4) dismissing the case without allowing Amsted leave to amend.  As an initial matter, irrespective of the lower court's reasoning, this Court's *de novo* review should result in an affirmation of dismissal for lack of subject matter jurisdiction, for the reasons set out above.  As explained above, Amsted has failed to meet its burden to demonstrate the unavailability or inadequacy of the remedy provided under section 1581(c).  Moreover, Amsted's attacks on the lower court's reasoning should be rejected, as explained below.

## 1. The Lower Court Did Not Impose An Unworkable Jurisdictional Standard

Amsted argues that the Court of International Trade erred by "impos{ing} an unworkable jurisdictional standard – one at odds with the standard for proving the disqualification claims."  AmstedBr at 43-49.  Its argument, however, is premised on an erroneous reading of the lower court's opinion, specifically, that the lower court purportedly held Amsted to "the self-destructive burden of revealing which confidences could be used to harm them."  *Id*. at 43.  To the contrary, in discussing "client confidences," the lower court was simply distinguishing the type of evidence plaintiffs provided in *Makita* where the lower court had found jurisdiction under section 1581(i), with the evidence Amsted

provided here, which the court found fell "far short" of establishing sufficient

certainty of attorney misconduct necessitating such interlocutory relief.[18]  Appx26-

27.  The lower court observed that unlike Amsted, plaintiffs in *Makita* had

"furnished affidavits and live testimony that detailed the precise nature of the

information that the potentially conflicted attorney had acquired."  Appx26 (citing

*Makita*, 819 F. Supp at 1102).  But nowhere did the lower court state that the same

type of evidence was *required* to establish jurisdiction under section 1581(i).  The

lower court, instead, stated that section 1581(i) jurisdiction must be determined "on

a case by case basis" and that "there may indeed be fact patterns involving . . .

ethical violations that rise to the level of interlocutory review."  Appx29 (n.16).

The lower court accordingly limited its holding to the "facts at bar" and concluded

that Amsted had not met its burden under *Miller*.  *See id.*

### 2.    The "Substantial Relationship" Test Does Not Categorically Establish Manifest Inadequacy

Amsted further argues that the trial court should have applied a presumption

that the "substantial relationship" between the *FRC I* investigations and *FRC II*

investigations, alone, sufficed in establishing manifest inadequacy.  AmstedBr at

45-50.  Amsted's theory is unpersuasive.  The question of whether matters are

---

[18] The Court of International Trade recognized *Makita* was not binding, but nevertheless addressed the case because Amsted had grounded its argument on it. Appx23 (n.12) & Appx25.

"substantially related" may be relevant in evaluating the existence of a conflict of interest between an attorney and former client, but it does not provide a categorical basis for finding a violation of applicable conflict-of-interest rules or disqualification of counsel, nor does it provide a conclusive basis for permitting interlocutory review under section 1581(i) during ongoing Commission proceedings.

As an initial matter, whether the *FRC I* investigations are substantially related to the *FRC II* investigations is not undisputed in this matter. The *FRC I* and *FRC II* investigations are separate investigative and administrative proceedings with distinct investigation numbers. And while the scope of the investigations, subject countries, and the period of investigations, overlap to a certain extent, they are, in fact, different. Moreover, unlike in most cases addressing attorney conflicts, the Attorney here has continuously represented the Coalition (and the companies and members within the organization) across both investigations, and in any event obtained an advance waiver from ARC with respect to future trade proceedings, potentially negating any force that the substantial relationship factor may have in determining the existence of a conflict.[19]

---

[19] As is not infrequently the case in large trade investigations, law firms will represent several domestic producers whose positions may become adverse in subsequent investigations or reviews based upon their importation and production activities.

42

Indeed, this Court's decisions make clear that the substantial relationship element does not automatically establish a violation of conflict-of-interest rules, particularly when the former client has executed an advance conflicts waiver, as ARC had done. *Shared Memory Graphics*, 659 F.3d at 1340-42 (finding that an advance conflicts waiver was intended to bar client from seeking disqualification of counsel). Even more, the existence of a conflict does not always require disqualification or justify immediate review. *See In re Univ. of S. Fla. Bd. of Trs.*, 455 F. App'x at 990-92 (denying writ despite the attorney's "concurrent conflict of interest" in light of the "potential prejudice" to the clients, "delay to the proceedings, and the harm to the administration of justice"); *Palumbo v. Tele-Comm., Inc.*, 157 F.R.D. 129, 131-32 (D.D.C. 1994) (stating that in deciding whether to disqualify counsel, application of ethics rules should not be "reflexive" or made in "a factual vacuum," but should account for all factors including "party's right to counsel of choice" and "financial burden on a client of replacing disqualified counsel"). Given the complexities involved in conflicts analyses and the balancing of different policy interests required in disqualification determinations, a showing of a substantial relationship alone cannot categorically demonstrate manifest inadequacy.

The cases cited by Amsted do not establish otherwise. AmstedBr at 46-47 (citing *Dynamic 3D Geosolutions LLC v. Schlumberger Ltd. (Schlumberger N.V.)*,

837 F.3d 1280, 1283 (Fed. Cir. 2016); *Atasi Corp. v. Seagate Tech.*, 847 F.2d 826, 829-30 (Fed. Cir. 1988); *Kearns v. Fred Lavery Porsche Audi Co.*, 745 F.2d 600 (Fed. Cir. 1984); *EZ Painter Corp. v Padco, Inc.*, 746 F.2d 1459, 1461 (Fed. Cir. 1984); *United States v. Prevezon Holdings, Ltd.*, 839 F.3d 227, 239, 241 (2d Cir. 2016); *Chugach Elec. Ass'n v. U.S. Dist. Ct. for Dist. of Alaska*, 370 F.2d 441, 444 (9th Cir. 1966)). To the contrary, all but two cases do not even address the substantial relationship element within the context of jurisdiction. *Dynamic*, 837 F.3d at 1285-86; *Atasi*, 847 F.2d at 829; *EZ Painter*, 746 F.2d at 1461; *Kearns*, 745 F.2d at 600. And while *Prevezon* and *Chugach* considered the substantial relationship between proceedings in granting writs of mandamus, they did so as *one* of several considerations in determining whether petitioners had a clear and indisputable right to the writ, in other words, whether disqualification was warranted. *Prevezon*, 839 F.3d at 242 (involving a "truly . . . extraordinary" situation where a nonparty nonwitness would face the risk of prosecution by a foreign government based on the potential disclosure of confidential information obtained during a prior representation); *Chugach*, 370 F.2d at 443 (directing disqualification of attorney who filed an antitrust suit against company for which he had served as general counsel and, thus, had been in a "position to acquire knowledge casting light on the purpose of {the company's} later acts{,} . . . agreements," and policies pursuant to which the alleged violations occurred).

44

### 3.    *Firestone* and *Shakeproof* Are Instructive and Persuasive in Counseling Against Interlocutory Review

Amsted further objects to the lower court's reliance upon *Firestone* and *Shakeproof* as persuasive and instructive authority, respectively.  AmstedBr at 50-55.  But Amsted's attempts to distinguish those cases do nothing to undermine their core findings that a disqualification denial "plainly" falls within the "large class of orders that are indeed reviewable on appeal after final judgment," *Firestone*, 449 U.S. at 377, and that there is "substantial force" to the idea that interlocutory review would be "premature," *Shakeproof*, 104 F.3d at 1313.

Amsted claims that *Firestone* is inapplicable because unlike in this case, the conflicted representation did not involve substantially related matters.  It further argues that *Firestone* implicated a different statute, the collateral order exception to 28 U.S.C. § 1291, and involved civil litigation in which an adequate remedy is afforded because the factfinder can be replaced.  AmstedBr at 51-54.  Amsted's arguments fail.  First, the presence or absence of a substantial relationship was not a deciding factor in the Supreme Court's analysis regarding the question of immediate review of disqualification denial orders.  Rather, the Supreme Court based its finding on the basis that there must be "much more" than the petitioner's hint at the "possibility that the course of the proceedings may be indelibly stamped or shaped with the fruits of a breach of confidence or by acts or omissions prompted by a divided loyalty." *Firestone*, 449 U.S. at 376.

Moreover, that a different statute was at issue does not diminish the

applicability of *Firestone*.  Amsted perplexingly seeks to downplay *Firestone's*

relevance upon this basis, despite that the vast majority of cases cited throughout

its Corrected Opening Brief likewise do not relate to trade proceedings or involve

consideration of section 1581(i).  In any event, the collateral order exception to the

final judgment rule at issue in *Firestone* is certainly instructive because amongst

the elements in finding a reviewable collateral order is that it "be effectively

unreviewable on appeal from the final judgment," which is analogous to a showing

of manifest inadequacy under section 1581(i).  449 U.S. 375-76.  In further

attempting to differentiate *Firestone* upon this basis, Amsted makes an illogical

argument that section 1581(i) is not constrained in the same manner as this Court's

final judgment rule set forth in 28 U.S.C. § 1295 (this Court's counterpart to the

final judgment rule discussed in *Firestone*).  AmstedBr at 53-54.  Amsted misses

the point that, whether it be the collateral order exception (at issue in *Firestone*) or

review through section 1581(i) (as in *Shakeproof*), both require a similar

demonstration that there is no other adequate alternative remedy.

In addition, there is no basis for Amsted to differentiate the effectiveness of

relief pursuant to section 1581(c).  As previously discussed, the Court of

International Trade possesses authority to fashion appropriate relief following final

decisions, even when faced with "tainted" proceedings.  *See, e.g.*, *Koyo Seiko*, 715

F. Supp. at 1099 ("The reconsideration direction compels the statutorily designated decisionmaker to reconsider the matter in the light of its statutory mandate.") (quotation omitted); *Cf. Elkem Metals*, 193 F. Supp. 2d at 1317, 1320-21 (finding that the Commission had the inherent power to reconsider its final determinations to account for fraudulent information with respect to pricing that had been provided during the original investigations).

Amsted's attempt to discount *Shakeproof* as instructive authority is also unavailing. Amsted argues that *Shakeproof* is distinguishable on the facts and that this Court's statements regarding jurisdiction constituted "mere *dicta*." AmstedBr at 54. Amsted ignores that *Shakeproof* addressed the same type of challenge at issue in this appeal – specifically, whether the Court of International Trade erred in dismissing plaintiff's complaint seeking disqualification of a law firm that represented an adverse party. Moreover, like in this case, plaintiff in *Shakeproof* alleged taint stemming from prior related proceedings in which the conflicted attorney "had been personally involved" and had "access to {plaintiff's} business proprietary information." *Shakeproof*, 104 F.3d at 1311. In any event, regardless of the differences in the specific facts, this Court did not premise its jurisdictional doubts on the merits, which the Court separately addressed in upholding the lower court's dismissal of the case. Instead, this Court's suggestion that judicial review was "premature" was based upon its "serious doubts" that

interlocutory judicial review would be "manifestly inadequate" if it were postponed until Commerce's final decision. *Id*. at 1313. That this language was *dicta* does not negate that it is nevertheless instructive and consistent with *Firestone*, the statute's legislative history, and this Court's precedent establishing the statute's strict limitations with respect to seeking piecemeal review over claims under section 1581(i).

**4.    The Lower Court Did Not Err in Dismissing the Case Without Leave to Amend *When Such Leave to Amend Was Never Requested***

Finally, Amsted contends that the Court of International Trade erred by not allowing it leave to amend its already previously amended complaint.[20] AmstedBr at 55-57. Amsted omits the fact that it never filed a motion requesting leave for such purposes in the first instance. Notably, Amsted had taken the liberty of amending its complaint when it thought it appropriate, as demonstrated by its extensive amendment of its original complaint on October 24, 2022, pursuant to Court of International Trade Rule 15(a). Appx1008. Yet, it failed to seek leave to amend a second time from the lower court to add the jurisdictional facts that it now asks this Court to consider on appeal.

---

[20] Amsted had previously amended its original complaint as a matter of course during the proceedings before the Court of International Trade. CIT Rule 15(a); Appx1008.

At the Court of International Trade, when a party has already amended once as a matter of course, additional amendments may be granted by leave of the lower court or by written consent of the adverse party.  *See* CIT Rule 15(a)(2). Yet, while "{l}eave shall be given freely when justice so requires," *id.*, Amsted, *never requested leave* from the lower court to amend again its previously amended complaint.  Nor did it seek written consent from the other parties to amend.  And even had Amsted filed such a motion, it would have been within the sound discretion of the court to grant it.  *Intrepid v. Pollock*, 907 F.2d 1125, 1129 (Fed. Cir. 1990).

Notwithstanding that leave to amend was never requested, Amsted complains that the lower court erred when it "never offered Plaintiffs an opportunity to amend or explained why amendment could not cure perceived inadequacy."  AmstedBr at 56.  Amsted ignores that it "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) (noting that an "opportunity to be heard" and not an opportunity for amendment, is required before dismissal).  In the context of invoking jurisdiction under section 1581(i), Amsted specifically had the burden to establish that the remedy under section 1581(c) was unavailable or manifestly inadequate.  *Miller*, 824 F.2d at 964. Amsted, which was represented at the lower court by experienced counsel from

four separate law firms, cannot now place blame on the lower court for its own

inaction when it alone bore the burden to establish jurisdiction.

That Amsted was purportedly unable to "glean{}" that its amended

complaint did not adequately establish subject matter jurisdiction also in no way

excuses or lessens its burden to establish jurisdiction.  AmstedBr at 56.  This

argument also begs credulity given the briefing and argument conducted on this

issue before the lower court.  The Commission had filed two motions to dismiss for

lack of subject matter jurisdiction and for failure to state a claim upon which relief

could be granted (the first to Amsted's original complaint and the second to its

amended complaint).  These motions set forth the high standard required to invoke

the residual jurisdiction provision, were replete with relevant case law (including

those discussed and relied upon by the lower court), and pointed to the deficiencies

in Amsted's claims.  Amsted had ample opportunity to respond, which it did in

writing and orally at the court hearing.  Even after the hearing at which there was

extensive discussion of the jurisdictional issue and standard, Amsted made no

move to request leave to amend.

Nor was it "the proper course" for the Court of International Trade to have

"dismiss{ed} with leave to amend," as Amsted further contends.  AmstedBr at 58-

59.  Amsted does not, nor can it, cite any mandatory authority requiring the Court

of International Trade to have done so on its own accord (without a motion for

leave to amend) rather than entering judgment as it did here.  The cases cited by

Amsted are distinguishable and do not establish such a requirement.  AmstedBr at

58-59 (citing *Cahill v. Merit Syst. Prot. Bd.*, 821 F.3d 1370 (Fed. Cir. 2016);

*Astornet Techs. Inc. v. BAE Sys., Inc.,* 802 F.3d 1271 (Fed. Cir. 2015); *Arthrocare*

*Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365 (Fed. Cir. 2005)).  Rather, in those

cases, this Court referred to district court procedure regarding amendment of

claims within the context of dismissal for failure to state a claim upon which relief

can be granted (and not for lack of subject matter jurisdiction), and, in any event,

either affirmed or overturned the lower tribunal's dismissal without reaching the

issue of whether the lower tribunal should have allowed amendment of the

complaint due to insufficiency of allegations contained therein.  *See Cahill*, 821

F.3d at 1374-76 (overturning the MSPB's dismissal for lack of jurisdiction upon a

finding that the employee had nonfrivolously alleged facts sufficient to establish

the Board's jurisdiction over his whistleblower claim); *Astornet,* 802 F.3d at 1280

(affirming the district court's dismissal upon the ground that the complaints at

issue were statutorily required to have been filed in the U.S. Court of Federal

Claims); *Arthrocare*, 406 F.3d at 1368-70 (holding that the district court's

dismissal of defendant's counterclaim under Rule 12(b)(6) without allowing

defendant an opportunity to respond to plaintiff's motion to dismiss was not in

accordance with applicable Third Circuit procedural law).  Amsted's reliance on

*Foman v. Davis*, 371 U.S. 178 (1962), is likewise unavailing because the petitioner in that case had sought leave to amend, which Amsted did not do in proceedings before the lower court.  AmstedBr at 59.

Despite its own inaction, Amsted now seeks belatedly to add additional facts from a different case before the Court of International Trade into the record of this case, and requests this Court to consider those additional facts.  AmstedBr at 57-58.  As Amsted's cited cases make clear, however, only amendments to cure incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves, are permissible under 28 U.S.C. § 1653.  *Mills*, 118 F.3d at 53-54; *see* AmstedBr at 57-58 (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989); *Schlesinger v. Councilman*, 420 U.S. 738, 745 n.9 (1975); *Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969); *Mojave Desert Holdings, LLC v. Crocs, Inc.*, 995 F.3d 969, 981 (Fed. Cir. 2021); *Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 55 (2d Cir. 2019); *Beer v. United States*, 696 F.3d 1174, 1186 (Fed. Cir. 2021)).  Amsted's proposed amendments do nothing to cure the defects that exist in the jurisdictional facts themselves, and are therefore impermissible.  Specifically, Amsted seeks to add information regarding "the precise nature of the information that the potentially conflicted attorney had acquired."  AmstedBr at 57, Appx99-103.  However, such additional allegations only relate to Amsted's argument that there may be "fruits of a breach of

confidence," which is the exact kind of harm that the Supreme Court found insufficient to warrant interlocutory review. *Firestone*, 449 U.S. at 376. As the Supreme Court in *Firestone* made clear, "the possibility that the course of the proceedings may be indelibly stamped or shaped with" such breaches of confidence do not demonstrate the "*concrete* example of the indelible stamp or taint" that would render the conflict-of-interest allegations "effectively unreviewable" absent immediate appeal. *Id.* at 376 (emphasis added) (quotations omitted). Likewise here, the additional information Amsted requests this Court to consider does nothing to support a "concrete" finding of an indelible taint that cannot be reviewed upon the conclusion of the Commission's investigations.

Amsted's request is also belated, providing another reason why this Court should decline consideration of the additional facts. *Mills*, 118 F.3d at 55 ("The Supreme Court has identified a range of circumstances, including undue delay . . . that should preclude granting a motion to amend."). Indeed, and as discussed above, Amsted "had every reason 'to suspect a jurisdictional difficulty' with {its} case, but took 'no reasonable opportunity to cure it before the appeal.'" *Id.* at 53-54 (quoting *Sarnoff v. Am. Home Prods. Corp.*, 798 F.2d 1075, 1079 (7th Cir. 1986)). Amsted's eleventh-hour request to add jurisdictional facts should be rejected.

### III.    Alternatively, This Court Can Affirm the Dismissal of This Case on Grounds that Amsted Failed to State a Claim Upon Which Relief Can Be Granted

In the alternative, even if Amsted can overcome the subject matter jurisdictional hurdles, its claims should be dismissed under Court of International Trade Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041 (Fed. Cir. 2012), the Court of International Trade had dismissed certain claims for lack of subject matter jurisdiction; the Federal Circuit affirmed the dismissal of these claims, but on the alternative basis that the claims must be dismissed under Fed. R. Civ. P. 12(b)(6).[21] *Id.* at 1064-65 & n.9 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This Court explained that affirmance of the trial court's decision to dismiss was still appropriate, citing *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 254 (2010), in which the Supreme Court likewise had affirmed a judgment dismissing claims for lack of subject matter jurisdiction even though the Supreme Court found that these claims must be dismissed under Fed. R. Civ. P. 12(b)(6) instead.

In this case, Amsted's amended complaint is deficient and – irrespective of subject matter jurisdiction – should be dismissed because it fails to plead facts that

---

[21] Court of International Trade Rule 12(b)(6) tracks Fed. R. Civ. P. 12(b)(6) verbatim.

state a claim to relief that is plausible on its face, as required under *Twombly*.

Specifically, the amended complaint fails to allege any plausible arbitrary or

capricious Commission action that entitles Amsted to relief. Indeed, instead of

pointing to any conclusive determination of a conflict of interest requiring

disqualification or any mandatory requirement for the Commission to adjudicate

ARC's conflict-of-interest claim, the amended complaint alleges nothing more

than the possibility that Attorney "may have" violated his ethical obligations to a

former client. Appx60, Appx62 (¶¶ 6, 19). Given the administrative discretion

provided to agencies to carry out their statutory mandate, it was reasonable for the

Commission to have determined "that there {was} not good cause, . . . *at this time*,

to disqualify."[22]  Appx54-55 (emphasis added); *see also Vt. Yankee Nuclear Power

Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978) ("{A}dministrative

agencies should be free to fashion their own rules of procedure and to pursue

methods of inquiry capable of permitting them to discharge their multitudinous

duties.") (quotation omitted); *Goldsmith v. U.S. Bd. of Tax Appeals*, 270 U.S. 117,

121-22 (1926) (an agency has the authority to set general rules governing hearings

before it and the power to create and enforce rules limiting who can practice and

appear before the agency). In doing so, the Commission properly maintained its

---

[22] As previously noted, Amsted has dropped its claim that the Commission acted
arbitrarily and capriciously in declining to investigate Amsted's speculative
allegations of an APO breach. AmstedBr at 18 n.3.

focus on its obligation to determine whether the imported merchandise in question either materially injures or threatens to materially injure a domestic industry. 19 U.S.C. §§ 1671d(b)(1) & 1673d(b)(1).

Notably, Amsted's amended complaint suffers from the same infirmities that convinced this Court to dismiss certain claims for failure to state a claim upon which relief can be granted in *Sioux Honey*, 672 F.3d at 1061-64. In *Sioux Honey*, this Court held that while it may have been possible that Commerce and Customs and Border Protection engaged in actions or inactions alleged in the complaint, plaintiffs did not provide enough factual detail in the complaint to render their conclusions plausible. *Id*. at 1063. The same is true here: while Amsted has posited through innuendo and tenuous connection that it is possible the Attorney breached some fiduciary duty from the brief time ARC was a member of the Coalition at the beginning of the *FRC I* predecessor investigations, Amsted failed to provide any factual details rendering plausible its conclusion that the Commission's decision not to disqualify the Attorney and Law Firm "at this time" was improper.

Consequently, as in *Sioux Honey*, even if this Court declines to find lack of subject matter jurisdiction under Rule 12(b)(1), it should affirm the Court of International Trade Court's dismissal of the case because Amsted has failed to state a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that this

Court affirm the trial court's judgment.

Respectfully submitted,

/s/ Dominic L. Bianchi
Dominic L. Bianchi
General Counsel

/s/ Andrea C. Casson
Andrea C. Casson
Assistant General Counsel for Litigation

/s/ Jane C. Dempsey
Jane C. Dempsey
Attorney Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC  20436
Tel:  (202) 205-3142
Jane.Dempsey@usitc.gov

*Counsel for Defendants-Appellees*
*U.S. International Trade Commission and*
*Acting Secretary Katherine M. Hiner*

February 22, 2023

## **CERTIFICATE OF COMPLIANCE WITH CONFIDENTIALITY REQUIREMENTS**

This brief complies with the limitations and requirements related to confidential information set forth in Fed. Cir. R. 28(d).  This brief contains 13 words (including numbers) marked as confidential, as identified and described in the Table of Contents.

*/s/ Jane C. Dempsey*
Jane C. Dempsey

*Attorney for Defendants-Appellees*
*U.S. International Trade Commission*
*and Acting Secretary Katherine M.*
*Hiner*

## CERTIFICATE OF SERVICE

I, Jane C. Dempsey, hereby certify on this 22nd day of February 2023

that the foregoing **NONCONFIDENTIAL BRIEF OF DEFENDANTS-**

**APPELLEES UNITED STATES INTERNATIONAL TRADE**

**COMMISSION AND KATHERINE M. HINER** was served on counsel of

record by the Court's CM/ECF system.

/s/ Jane C. Dempsey
Jane C. Dempsey
Attorney for Defendants-Appellees
U.S. International Trade Commission
500 E Street, SW, Suite 707
Washington, DC  20436
tel. (202) 205-3142
fax (202) 205-3111
Jane.Dempsey@usitc.gov

*Attorney for Defendants-Appellees*
*U.S. International Trade Commission*
*and Katherine M. Hiner*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Fed. Cir. R.

32(b). The brief contains 13,346 words, excluding the parts of the brief exempted

by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). The brief has

been prepared in a proportionally spaced typeface using Microsoft Word 365 in

14-point Times New Roman font.


/s/ Jane C. Dempsey
Jane C. Dempsey

*Attorney for Defendants-Appellees*
*U.S. International Trade Commission and*
*Acting Secretary Katherine M. Hiner*


Dated:  February 22, 2023